UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FUJI PHOTO FILM U.S.A., INC., Plaintiff, v. SCOTT F. MCNULTY, LORI S. MCNULTY, a/k/a LORI STRAUB, MICHAEL C. CONNELL, FRANK FRANZE, DWAIN K. TAYLOR, ADK AMERICA, INC., AWOL, ESSENTIAL COMMUNICATIONS & INK LLC, REVOLUTIONARY GRAPHICS, INC., AND THE WINDWOOD GROUP LLC, Defendants. | : | Case No. 05 Civ. 7869 (SCR) |

**REPLY BRIEF OF DEFENDANT SCOTT F. MCNULTY IN FURTHER SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

SILLS CUMMIS EPSTEIN & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Tel: (212) 643-7000
Fax: (212) 643-6500
Attorneys for Defendant
Scott F. McNulty

OF COUNSEL AND ON THE BRIEF:
A. Ross Pearlson (AP-1277)
Lawrence S. Horn (LH-7997)
Richard J. Sapinski (RS-7781)

# TABLE OF CONTENTS


**PAGE**

PRELIMINARY STATEMENT ........................................ 1

ARGUMENT ........................................ 4

I. Fuji Has Failed To Plead Mail And/Or Wire Fraud With The Requisite Particularity. ........................................ 4

A. Fuji's Complaint Pleads "Upon Information and Belief" And Does Not Particularize Either The Allegedly Fraudulent Invoices, The So-Called "Sporting and Entertainment" Scheme, Or The Rebate Scheme. ........................................ 4

B. Where A False Invoice Scheme Is Alleged The Plaintiff Must Specifically Identify Which Invoices Are False, And Particularize The Falsehood. ........................................ 8

II. Fuji Has Failed Adequately To Plead A Rico "Enterprise" Or A "Pattern" Of Racketeering Activity. ........................................ 9

A. Neither Fuji's CPD Nor The String Of Defendants Are Properly Pled "Enterprises." ........................................ 9

B. Fuji's "Pattern" Allegations Are Insufficient ........................................ 14

CONCLUSION ........................................ 15

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Aniero Concrete Co. v. New York City Construction Authority*, 2000 U.S. Dist. Lexis 8833 (S.D.N.Y. June 27, 2000) .......... 7

*Bulkmatic Trans. Co. v. Pappas*, 2001 U.S. Dist. Lexis 6894 (S.D.N.Y. May 11, 2001) .......... 12

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213 (S.D.N.Y. 1992) .......... 8

*Coveal v. Consumer Home Mortgage, Inc.*, 2005 U.S. Dist. Lexis 5003 (E.D.N.Y. March 29, 2005) .......... 7

*Curiale v. Capolino*, 883 F. Supp. 941 (S.D.N.Y. 1995) .......... 10

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) .......... 10

*First Capital Asset Management, Inc. v. Satinwood*, 385 F.3d 159 (2d Cir. 2004) .......... 1, 12, 13

*First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) .......... 12, 13

*Furnco Const. Co. v. Waters*, 438 U.S. 567 (1978) .......... 1

*Gunther v. Dinger*, 547 F. Supp. 25 (S.D.N.Y. 1982) .......... 10

*Hansel N Gretel Brand, Inc. v. Savitsky*, 1997 U.S. Dist. Lexis 13324 (S.D.N.Y. Sept. 2, 1997) .......... 11

*Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258 (3d Cir. 1995) .......... 12

*Mancari's Chryster/Jeep, Inc. v. Universal Automobile Leasing, Inc.*, 2005 U.S. Dist. Lexis 20388 (N.D. Ill. Sept. 15, 2005) .......... 8

*Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 1993 U.S. Dist. Lexis 1959 (S.D.N.Y. Feb. 24, 1993) .......... 6

*Merrill, Lynch, Pierce, Fenner & Smith v. Young*, 1996 U.S. Dist. Lexis 9506 (S.D.N.Y. July 8, 1996) .......... 6

*Moll v. U.S. Life Title Insurance Co.*, 654 F. Supp. 1012 (S.D.N.Y. 1987) .......... 14

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*New York Automobile Insurance Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 U.S. Dist. Lexis 15645 (S.D.N.Y. Oct. 6, 1998)....14

*Pacific Electric Wire & Cable Co., Ltd. v. Set Top International Inc.*, 2005 U.S. Dist. Lexis 3811 (S.D.N.Y. March 11, 2005)....9

*Philan Insurance Ltd. v. Frank B. Hall & Co., Inc.*, 712 F. Supp. 339 (S.D.N.Y. 1989)....6

*Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281 (N.D. Ill. 1990)....11

*In re Sugar Industry Antitrust Litigation*, 579 F.2d 13 (3d Cir. 1978)....11

*In re Sumitomo Copper Litigation*, 995 F. Supp. 451 (S.D.N.Y. 1998)....8

*Taylor v. Vermont Department of Education*, 313 F.3d 768 (2d Cir. 2002)....7

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1980)....1

*Three Crown Ltd. v. Caxton Corp.*, 817 F. Supp. 1033 (S.D.N.Y. 1993)....10

*United States v. Angelilli*, 660 F.2d 23 (2d Cir. 1981)....10

*United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994)....6

*United States v. Hamilton*, 334 F.3d 170 (2d Cir. 2003)....10

*United States v. ITT Blackburn Co., Division of ITT*, 824 F.2d 628 (8th Cir. 1987)....11

*United States v. Scotto*, 641 F.2d 47 (2d Cir. 1980)....10

*United States v. Stewart*, 955 F. Supp. 385 (E.D. Pa. 1997)....12

*United States v. Turkette*, 452 U.S. 576 (1981)....11

*Western Beef, Inc. v. Compton Investment Co.*, 611 F.2d 587 (5th Cir. 1980)....11

*Zito v. Leasecomm Corp.*, 2004 U.S. Dist. Lexis 19778 (S.D.N.Y. 2004)....14

*Zito v. Leasecomm Corp.*, 2004 U.S. Dist. Lexis 19778 (S.D.N.Y. Sept. 30, 2004)....8

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

**STATUTES & COURT RULES**

18 U.S.C. § 1961(4) ....................3, 10, 11, 13

18 U.S.C. § 1962(c) ....................1

*Fed. R. Civ. P.* 8 ....................6

*Fed. R. Civ. P.* 9(b) ....................1, 2, 4, 6, 7, 8

N.Y. Penal Law § 180.03 ....................6, 15

## PRELIMINARY STATEMENT

McNulty respectfully submits this reply brief in further support of his November 3, 2005 motion to dismiss the Complaint in its entirety.

In its opposition papers, Fuji argues that it has properly pled a RICO claim under 18 U.S.C. § 1962(c). In particular, Fuji argues that: it has sufficiently pled an association-in-fact enterprise or, alternatively, that its former CPD division can constitute the enterprise; it has adequately pled a close-ended "pattern" of racketeering; and that it has pled mail and wire fraud with the particularity required by *Fed. R. Civ. P.* 9(b). Fuji's arguments, however, cannot sustain its facially deficient pleading.

*First,* with respect to *Fed. R. Civ. P.* 9(b)'s particularly requirements, Fuji incorrectly argues that it is sufficient for Fuji to identify the defendant who invoiced Fuji, the invoice and the services for which Fuji was billed. Fuji Opposition Brief ("Opp. Br.") at 23-24. As noted in McNulty's moving brief, the Complaint *does not identify* which AWOL invoices Fuji contends contain false statements, but rather asserts, without particularization or even specific identification, that some of the invoices are false. The Complaint simply does not state *which* invoices are false or even identify the falsity they contain. Such conclusory pleading cannot satisfy the requirements of *Fed. R. Civ. P.* 9(b) particularization. Similar defects are evident in the allegations relating to the invoices submitted by Revolutionary Graphics – they vacillate and do not make clear whether Fuji alleges that all or some contain false statements or which of the services were allegedly not performed – and, in any event, list invoices only during the 18-month interval from January 31, 2002 to July 3, 2003. Likewise, the allegations relating to Essential Communications are similarly vague and do not clearly state whether Fuji is attacking all or some of the invoices from a similar eighteen (18) month interval.

Fuji mistakenly argues that it can satisfy *Fed. R. Civ. P.* 9(b) without particularizing which invoices it contends are false and/or the statements in those invoices it claims are false because trial courts have permitted the pleading of mail fraud and/or wire fraud by providing a description of the scheme and an allegation that the United States mail and/or interstate wire transmissions were necessary to fulfill it. Unlike here, those cases involved situations where the mail was used in furtherance of an overall scheme to defraud, but the mailings themselves were not fraudulent. That rule of pleading does not apply to this case, where the plaintiff claims that the mailings themselves were fraudulent. In such a case, in order to satisfy *Fed. R. Civ. P.* 9(b), a plaintiff is required to particularize not only the specific invoices it claims are fraudulent, but the particular statements it claims to be fraudulent as well. This Fuji has not done.

Fuji also argues that *Fed. R. Civ. P.* 9(b) should be relaxed because "[i]n this case, knowledge of whether certain services were performed is particularly within the knowledge of McNulty, who is no longer with Fuji…." Opp. Br. at 27. Fuji's unpled assertion is a concession that its Complaint does not particularize the invoices supposedly containing falsehoods and that its pleadings are speculative at best. Fuji cannot rely on such speculation because, as noted in the moving papers, the Complaint fails to plead facts amounting to a strong inference of fraud.

In addition, the Complaint fails to plead facts showing that whether services were provided is wholly within the knowledge of the defendants. For example, Fuji does not allege that those who approved the invoices are no longer employed by it or that it lacks the documents or personnel to determine which services were allegedly not provided. Plaintiff does not allege that McNulty approved the various invoices. No explanation or justification for Fuji's vague, conclusory and wholly speculative pleading can be found within the Complaint itself.

*Second*, Fuji argues that it has pled sufficient facts alternatively showing an association-in-fact enterprise or a "legal entity" enterprise. 18 U.S.C. § 1961(4) describes two categories of entities that come within the "enterprise" definition: (a) corporations, partnerships and other "legal entities;" and (b) associations-in-fact.

Fuji's former corporate division, CPD, is not a "legal entity" and, as such, cannot qualify as an enterprise under 18 U.S.C. § 1961(4)'s plain language. Fuji cannot avoid that conclusion by repeatedly referring to CPD as a "legally cognizable entity" in derogation of Section 1961(4)'s plain language providing for either "legal entity" enterprises *or* association-in-fact enterprises. The CPD also cannot be the RICO "enterprise" here because RICO's language and structure do not permit *victim* entities to be the enterprise. Here, the Complaint alleges that CPD was the victim of, and not a participant in, defendants' fraud.

Alternatively, Fuji strings together all of the defendants and the CPD to plead an association-in-fact enterprise. However, contrary to recent Second Circuit precedent, Fuji's enterprise allegations are conclusory with no attempt to describe an enterprise with structure, organization or how the individuals function as a unit to achieve a common purpose. For example, the allegations here do not show a unitary purpose or that all defendants functioned as a single unit. Likewise, no hierarchy or organization is described through Fuji's inadequate "factual allegations."

*Third*, Fuji argues that it has pled a close-ended "pattern" of racketeering even though, except for the AWOL allegations, all of the invoices that are listed in its Complaint occurred between January 31, 2002 and December 31, 2003 – less than the two (2) year "bright line" threshold required by the Second Circuit. But the AWOL allegations, as well as the so-called Essential Communications and Windwood "rebate" schemes as well as the "sporting and

entertainment" scheme, are inadequately pled under *Fed. R. Civ. P.* 9(b). Accordingly, given Fuji's failure to make any well-pled allegations of mail/wire fraud for AWOL, the rebate schemes and the expense scheme, plaintiff has not adequately pled a RICO "pattern" because it has not satisfied the Circuit's "bright line," two (2) year rule.

## ARGUMENT

### I. FUJI HAS FAILED TO PLEAD MAIL AND/OR WIRE FRAUD WITH THE REEQUISITE PARTICULARITY.

#### A. Fuji's Complaint Pleads "Upon Information and Belief" And Does Not Particularize Either The Allegedly Fraudulent Invoices, The So-Called "Sporting and Entertainment" Scheme, Or The Rebate Scheme.

In its papers, Fuji mischaracterizes the allegations in its Complaint, particularly with respect to its allegations pertaining to false invoices. Fuji now argues that "attached to the Complaint are five schedules delineating each and every instance of knowingly false submissions of invoices by the Defendants." Opp. Br. at 25-26. In reality, the language of the Complaint demonstrates otherwise.

The Complaint, at Exhibit A, does list nearly 100 AWOL invoices – that are dated between February 1995 and June 1998 – and total $455,001. Of critical significance here, however, is the Complaint's concession that "*many* of the services set forth in the invoices were never performed." Complaint, ¶ 26 (emphasis added). Alternatively stated, the Complaint admits that Fuji is not even attempting to particularize which invoices may be fraudulent and which are not because its pleading, at a minimum, *concedes* that *many* invoices are *not* fraudulent and that *many* services were performed.

One would think that before asserting claims of fraud, Fuji would have reviewed the invoices with its senior managers familiar with the services provided by AWOL and Lori

McNulty to determine which services had been performed. That appears not to be the case. Instead, a review of the AWOL allegations shows that Fuji has not particularized the allegedly fraudulent invoices but rather asserts, "upon information and belief," that *some* unspecified invoices are false, without ever identifying *which* invoices are supposedly false and what falsehoods they contain.

*Second*, with respect to the Revolutionary Graphics scheme, the Complaint lists invoices, at Exhibit B, that cover the period between January 31, 2002 and July 30, 2003 – eighteen (18) months – and generally asserts that they contain false representations. Complaint, ¶ 35. The speculative nature of Fuji's allegations is confirmed by the Complaint's repeated use of "upon information and belief," Complaint, ¶¶ 32, 33, 34, and its failure otherwise to particularize its allegations. In addition, Fuji concedes that it has not pled whether any particular invoice is false because, plaintiff argues, "knowledge whether particular services were performed is particularly within the knowledge" of defendants. Opp. Br. at 27. The Complaint, however, is bereft of any *allegations* that state that this is a matter *exclusively* within defendants' knowledge.

*Third*, with respect to Essential Communications, the Complaint lists invoices from Essential Communications at Exhibits D and G, between June 17, 2002 and September 3, 2003, and generally asserts that they contain false representations. *See* Complaint ¶¶ 42, 50. The Complaint repeatedly states that it is "upon information and belief." Complaint, ¶¶ 38, 40, 41, 48, 50. Again, as noted above, Fuji concedes in its Brief that it has not pled *which* invoices contain false representations or which services were allegedly not performed, arguing (but not pleading) instead that that information is known only by defendants.

*Fourth*, with respect to the alleged "sporting and entertainment" fraud, the Complaint, at Exhibit F, simply lists certain invoices that are dated between June 27, 2002 and December 31,

2003. There is no other particularization, and no well-pled allegation that the invoices – or the underlying business expenses they reflect – were approved absent Fuji's understanding. *See* Complaint, ¶¶ 44 to 47.

*Fifth*, the Complaint also pleads the so-called Essential Communications and Windwood "rebate" schemes in a wholly conclusory manner. *See* Complaint ¶¶ 51 to 56, 57 to 64. Fuji fails to provide particularized facts with respect to any false statements, when they were made, who made them, who heard them, or who relied upon them. Specifically, the Complaint does not advise the reader as to who made the alleged representations about the rebate processors' prior experience or the cost structure of the rebate programs, who received those representations, when they were made, or how and why it was relied upon by Fuji. Complaint, ¶¶ 53, 63.

At the end of the day, Fuji's rebate scheme allegations amount to little more than a gripe that the services provided cost too much. This is a serious misuse of the mail fraud statute because Fuji has pled no facts from which an inference of fraud can be drawn (indeed Fuji's conclusory allegations show little more than a failed attempt to develop an in-house rebate processor for plaintiff). *Cf. United States v. D'Amato*, 39 F.3d 1249, 1261-62 (2d Cir. 1994) ("Finally, the government argues that D'Amato's services were not worth what Unisys paid for them. This argument is seriously misguided. The mail fraud statute does not criminalize the charging of an allegedly excessive fee, where, as here, a corporate agent with at least apparent authority to do so agreed to the fee, received no personal benefit from the fee, and was not deceived by the payee.").[1]

---

[1] Similarly, Fuji's wholly conclusory allegations of commercial bribery do not even satisfy the

Throughout its brief, Fuji attempts to recharacterize its conclusory allegations of mail and wire fraud in an attempt to provide the substantiation and particularization required by *Fed. R. Civ. P.* 9(b). However, it is well-settled the sufficiency of Fuji's pleading must be judged upon the allegations within the four corners of the Complaint and not how they are recast or recharacterized by counsel. *See, e.g., Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) ("Our consideration is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference."); *Coveal v. Consumer Home Mortgage, Inc.*, 2005 U.S. Dist. Lexis 5003, *23 (E.D.N.Y. March 29, 2005) ("Plaintiffs' argument fails because these allegations are not set forth in the complaint, but only in a legal memorandum and therefore cannot be considered by the Court."); *Aniero Concrete Co. v. New York City Construction Auth.*, 2000 U.S. Dist. Lexis 8833, *98-99 (S.D.N.Y. June 27, 2000) (same). Thus, Fuji cannot rescue its vacillating and speculative allegations of invoice fraud made "upon information and belief" by now claiming that all of the invoices are fraudulent or that none of the services specified were provided. As set forth below, counsel's arguments and recharacterizations cannot substitute for factually based and well-pled allegations.

---

more relaxed requirements of *Fed. R. Civ. P.* 8 because one simply cannot track and repeat the language of N.Y. Penal Law § 180.03 to state a legally sufficient commercial bribery claim. *See* McNulty's Opening Brief at 16-17. Indeed, where bribery is invoked as a predicate act in a RICO claim, courts in this district have repeatedly required that it be pled with *Fed. R. Civ. P.* 9(b) specificity or satisfy otherwise heightened pleading requirements. *See, e.g., Merrill, Lynch, Pierce, Fenner & Smith v. Young*, 1996 U.S. Dist. Lexis 9506, *19 (S.D.N.Y. July 8, 1996) (conclusory allegations of bribery are insufficient); *Mayatextil, S.A. v. Liztex U.S.A., Inc.*, 1993 U.S. Dist. Lexis 1959, *7 (S.D.N.Y. Feb. 24, 1993) (applying *Fed. R. Civ. P.* 9(b) to allegations of bribery); *Philan Ins. Ltd. v. Frank B. Hall & Co., Inc.*, 712 F. Supp. 339, 344 (S.D.N.Y. 1989) (same).

### B. Where A False Invoice Scheme Is Alleged The Plaintiff Must Specifically Identify Which Invoices Are False, And Particularize The Falsehood.

Fuji argues that it is excused from identifying and particularizing the false invoices because some cases permit a detailed description of the fraudulent scheme to be followed by an allegation that mailings or use of interstate wire transmissions were used to facilitate the scheme. *See* Opp. Br. at 21-22. The case law Fuji cites for this proposition – *Zito v. Leasecomm Corp.*, 2004 U.S. Dist. Lexis 19778 (S.D.N.Y. Sept. 30, 2004) and *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F. Supp. 213 (S.D.N.Y. 1992) – involve circumstances where the underlying scheme to defraud has been pled with particularity under *Fed. R. Civ. P.* 9(b) and the mailings did not involve false statements. That is not this case.

When, as in this case, the Complaint alleges that the mailings themselves are false, Judge Pollack has properly concluded that Second Circuit precedent requires that the allegations as to false mailings themselves be particularized:

> In cases in which a plaintiff claims that specific statements or mailings were themselves fraudulent, *i.e.*, themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred .... In cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves .... In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).

*In re Sumitomo Copper Litigation*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (citations omitted).

Since the false invoice schemes involve the use of allegedly false mailings, Fuji must particularize which invoices it contends are false, what are false about them and how plaintiff purportedly relied on the falsehood. *Cf. Mancari's Chryster/Jeep, Inc. v. Universal Auto Leasing, Inc.*, 2005 U.S. Dist. Lexis 20388, *9 (N.D. Ill. Sept. 15, 2005) ("If MCJ truly believes, as it asserts in the amended complaint, that certain transactions ... were part of a scheme, then

MCJ should have ample documentation of its own transactions...."); *Pacific Elec. Wire & Cable Co., Ltd. v. Set Top Int'l Inc.*, 2005 U.S. Dist. Lexis 3811, *43 (S.D.N.Y. March 11, 2005) (simply stating that much of the information is in the possession of defendants does not satisfy plaintiff's obligation to provide a statement of facts to support allegations made "upon information and belief").[2]

## II. FUJI HAS FAILED ADEQUATELY TO PLEAD A RICO "ENTERPRISE" OR A "PATTERN" OF RACKETEERING ACTIVITY.

As noted, Fuji has pled alternative enterprises: its former CPD; and an association-in-fact enterprise consisting of all of the defendants and the CPD. *See* Complaint, ¶¶ 72, 73. Fuji also asserts that it has properly pled a close-ended "pattern" that it claims shows the minimum two (2) year duration required under Second Circuit precedent. Fuji is wrong on both counts.

### A. Neither Fuji's CPD Nor The String Of Defendants Are Properly Pled "Enterprises."

In his moving brief, McNulty showed that Fuji's CPD cannot constitute a proper "legal entity," enterprise for two reasons: *first*, the CPD is not a "legal entity" as required by the plain language of RICO; and, *second*, RICO's structure does not permit the pleading of the "victim" as an enterprise.

---

[2] In response to defendants' arguments that the Complaint is inadequate, Fuji suggests that the supposed detail of the schedules compensates for its underlying lack of specificity. Opp. Br. at 7, 24-26. Fuji argues that "attached to the Complaint are five schedules delineating each and every instance of knowingly false submissions of invoices by the Defendants." Opp. Br. at 25-26. In reality, every schedule is based upon "information and belief" and none particularizes a single instance of an allegedly false submission of an invoice. Instead, the schedules are merely lists of invoices (not a single one of which is provided) that, according to the Complaint, may or may not contain false representations. *See, e.g.*, Complaint, ¶¶ 26, 33, 39, 40, 46 and 50. Accordingly, the schedules highlight rather than redress the Complaint's failure to plead fraud with the requisite particularity.

Fuji argues that its former CPD can be an enterprise primarily relying on case law that permits governmental entities and their instrumentalities to be named as "enterprises." But the rationale underlying those cases – the assumption that Congress intended RICO to apply to governmental units notwithstanding their omission from the definition of "enterprise" – has nothing to do with this case between private parties. *See, e.g., DeFalco v. Bernas*, 244 F.3d 286, 308 (2d Cir. 2001) (Town of Delaware, New York, a legal entity, can be a RICO enterprise because "the substance of RICO's provisions demonstrate a clear congressional intent that RICO be interpreted to apply to activities that corrupt public or governmental entities."); *United States v. Angelilli*, 660 F.2d 23, 31 (2d Cir. 1981) (noting that because "certain of RICO's substantive goals … appear to be directed at governmental entities" and that because predicate acts include "bribery, obstruction of justice,…and obstructions of state or local law enforcement," 18 U.S.C. § 1961(4) should be construed to include "governmental units"); *United States v. Hamilton*, 334 F.3d 170, 185 (2d Cir. 2003) (recognizing Second Circuit precedent that governmental units may be RICO enterprises); *Curiale v. Capolino*, 883 F. Supp. 941, 947 (S.D.N.Y. 1995) (same).

By definition, a RICO enterprise can "include[] any individual, partnership, corporation, association, *or other legal entity*, and any union[3] or group of individuals associated in fact although not a legal entity."[4] "Section 1961(4) describes two categories of associations that

---

[3] A union can be a RICO enterprise. *See United States v. Scotto*, 641 F.2d 47, 54 (2d Cir. 1980).

[4] Although the reasoning of *Three Crown Ltd. v. Caxton Corp.*, 817 F. Supp. 1033, 1045 (S.D.N.Y. 1993) is turgid, it appears that the court found those markets to be *part* of an association-in-fact enterprise. The conclusion in *Gunther v. Dinger*, 547 F. Supp. 25, 27 (S.D.N.Y. 1982) that an estate can be an enterprise is hardly surprising given that estates are "legal entities."

come within the purview of the 'enterprise' definition. The first encompasses organizations such as corporations and partnerships, and other 'legal entities.' The second covers 'any union or group of individuals associated in fact although not a legal entity.'" *United States v. Turkette*, 452 U.S. 576, 581-82 (1981). The "enterprises" alleged by Fuji fail to meet either definition.

Fuji attempts to allege that CPD, in and of itself, is a RICO "enterprise." In order to do so, however, under Section 1961(4)'s plain language and its structure, CPD must be a "legal entity." But as a fundamental tenet of corporate law, corporate divisions are *not* legal entities. *See, e.g., United States v. ITT Blackburn Co., Div. of* ITT, 824 F.2d 628, 631 (8th Cir. 1987) (accepting the concession that an "unincorporated division cannot be sued or indicted, as if is not a legal entity"); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 590 (5th Cir. 1980) (unincorporated division "not a separate legal entity wholly apart from its owner"); *In re Sugar Industry Antitrust Litigation,* 579 F.2d 13, 18 (3d Cir. 1978) ("A division of a corporation is not a separate entity…."); *Salzstein v. Bekins Van Lines, Inc.*, 747 F. Supp. 1281, 1282 n.1 (N.D. Ill. 1990) (noting that "by definition a corporate division is not a separate legal entity and hence is not suable). Since the CPD is not a separate "legal entity," Fuji must plead an "association-in-fact" enterprise with the "factual allegations" required by Circuit precedent. *See infra* at 12-14.

Moreover, as noted in McNulty's moving papers, "victims" are not RICO enterprises because the "enterprise" is, again under RICO's plain language and structure, the thing used to carry out the racketeering activity. There are no allegations in this case that the former CPD *victimized* third-parties. In its brief, Fuji cites several cases where courts have held that an entity that is *both* a victim and victimizer can be part of a RICO enterprise. *See Hansel 'N Gretel Brand, Inc. v. Savitsky*, 1997 U.S. Dist. Lexis 13324, *11 (S.D.N.Y. Sept. 2, 1997) ("[I]t makes little sense to say that HNG was a participant in an enterprise whose guiding purpose was to bilk

HNG. Any amended complaint, therefore, should not include HNG in the alleged enterprise."); *Bulkmatic Trans. Co. v. Pappas*, 2001 U.S. Dist. Lexis 6894, *22-23 (S.D.N.Y. May 11, 2001) (defendants used the Bronx Terminal to victimize plaintiff Bulkmatic, therefore it could be part of an enterprise); *United States v. Stewart*, 955 F. Supp. 385, 387 (E.D. Pa. 1997) ("Stewart is correct that the enterprise and victim cannot be the same entity."). Those cases, however, have nothing to do with this case in that CPD is not alleged to have been used to harm others.

In a nutshell, the Third Circuit got it right when it found that enterprise allegations must fail where the enterprise and victim are alleged to be one and the same. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 267 (3d Cir. 1995) ("[A] victim corporation drained of its own money by pilfering officers and employees could not be reasonably viewed as the enterprise through which employee persons carried out their racketeering activity.").

Finally, Fuji's alternative "enterprise" – the string of defendants along with the CPD – fails because the Complaint, as required by *First Capital Asset Management, Inc. v. Satinwood*, 385 F.3d 159, 173-74 (2d Cir. 2004), does not contain the "factual allegations" setting forth the requisite elements of an association-in-fact enterprise. As shown in McNulty's moving papers, the *Satinwood* court, relying on *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994), requires "factual allegations" setting forth the "hierarchy, organization and activities" from which it can be concluded that its "members

functioned as a unit." *See* McNulty's Opening Brief at 19-22. Fuji's Complaint utterly fails in this regard.[5]

Although Fuji argues that its allegations support the existence of a "hub and spoke" association-in-fact, no facts have been pled which interconnect the various schemes and defendants as part of a *unitary* organization.[6] To the contrary, a classic hub and spoke conspiracy in which McNulty would be the "hub" and the other defendants the "spokes" lacks the common purpose and organizational hierarchy and structure to be a RICO enterprise. *Satinwood*, 385 F.3d at 174-75; *see also First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. at 98 ("Conclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry in the 1980s are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise.' Nor does common sense support the existence of such an 'enterprise.' Rather, it appears at worst that several borrowers each committed a similar but independent fraud with the aid of a particular

---

5 In order to bolster its deficient allegations concerning the existence of an association-in-fact enterprise, Fuji again attempts to recast and recharacterize the Complaint. For example, Fuji argues, in conclusory fashion, that the "association-in-fact enterprise had a structure with McNulty at the center and the other Defendants assigned to their particular roles as alleged in the Complaint." Opp. Br. at 3, *citing* Complaint, ¶¶ 1, 3-11, 74. The cited paragraphs support no such conclusion. Specifically, Paragraphs 1, and 3-11 merely identify defendants. Paragraph 74 merely states, in conclusory manner, "[e]ach of the above enterprises was, at all relevant times, engaged in activities that affected interstate commerce."

6 Fuji argues that "Fuji's Complaint clearly pleads a well-organized and structured association-in-fact enterprise, which performed as a continuing unit from on or about 1995 until on or about February 2004, for the common purpose of defrauding Fuji in order to benefit the members of the enterprise." Opp. Br. at 9, *citing* Complaint, ¶ 73. Again, plaintiff's arguments do not accurately reflect the allegations in its Complaint. To the contrary, Paragraph 73 merely alleges in a wholly conclusory fashion, "[a]t the times alleged in this Complaint, the CPD, and defendants McNulty, L. McNulty, a/k/a Straub, Connell, Franze, Taylor, ADK, AWOL, ECI, Revolutionary Graphics and Windwood were an association-in-fact that constituted an 'enterprise' as defined in 18 U.S.C. § 1961(4)." Complaint, ¶ 73.

leader, and that each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower."); *New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, 1998 U.S. Dist. Lexis 15645, *15 (S.D.N.Y. Oct. 6, 1998) (rejecting the notion that a classic hub and spokes conspiracy is a RICO enterprise, instead, "[e]ach is a single two-party conspiracy."); *Moll v. U.S. Life Title Ins. Co.*, 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987) (rejecting a hub and spokes conspiracy as a RICO enterprise, "absent from the complaints are any factual allegations regarding the continuity of structure or personnel of this group.").[7] In short, given the absence of factual allegations showing a unitary purpose and the requisite structure, continuity and hierarchy, Fuji's putative association-in-fact enterprise is insufficiently pled.

**B. Fuji's "Pattern" Allegations Are Insufficient.**

Fuji concedes that it is attempting to plead a closed-ended "pattern" and that, as such, plaintiff's allegations are subject to the Second Circuit's "bright line" two (2) year minimum duration test. *See* Opp. Br. at 19. Fuji also does not challenge McNulty's case law showing that insufficient mail/wire fraud allegations cannot be used to show the requisite "continuity." *See* McNulty's Opening Brief at 23 n.1.

As shown in the moving papers and above, the AWOL allegations fail due to a lack of particularity on two levels: *first*, they fail to identify which invoices are supposedly false, and,

---

[7] Fuji's reliance upon *Zito v. Leasecomm Corp.*, 2004 U.S. Dist. Lexis 19778 (S.D.N.Y. 2004) is misplaced. There, in contrast to this case, the members of the alleged association-in-fact enterprise all participated in a single, fraudulent scheme, and were aware that there were others engaged in the same activity as part of a larger structure. *See Zito v. Leasecomm Corp.*, 2004 U.S. Dist. Lexis at *27-28.

*second*, they fail to identify in what manner the invoices were false, including which services were billed for but not performed. The only non-AWOL invoices listed in the Complaint's attachments are dated between January 31, 2002 and December 31, 2003 – less than the minimum "bright line" of two (2) years. This temporal insufficiency is not rescued by the so-called Essential Communications and Windwood "rebate" schemes because, as shown above and in the moving papers, they have been pled in a conclusory manner. Nor does the patently insufficient "sporting and entertainment" allegations rescue Fuji's "pattern." Likewise, Fuji's commercial bribery allegations are wholly conclusory, simply tracking the language of N.Y. Penal Law § 180.03 and, therefore, of no moment for "pattern" purposes. As such, given the above deficiencies, Fuji has not pled a "pattern" that extends the two (2) years required to sustain a closed-ended pattern.[8]

## CONCLUSION

For the foregoing reasons and the reasons in his moving papers, defendant Scott F. McNulty respectfully requests that the Court dismiss the Complaint in its entirety.

SILLS CUMMIS EPSTEIN & GROSS P.C.
Attorneys for Defendant Scott F. McNulty

By: /s/ A. Ross Pearlson
A. ROSS PEARLSON (AP-1277)

Dated: December 12, 2005

---

[8] Since Fuji's RICO Section 1962(c) claim is insufficient, plaintiff's Section 1962(d) claim fails as well. As a result, the underlying federal question jurisdictional basis for Fuji's state law claims collapse. Given the inappropriateness of supplemental jurisdiction, McNulty does not believe the Court should address Fuji's arguments that it has stated state law claims. Because the merits of those claims are for another court and another day, McNulty has not addressed them here or in his moving papers.