**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------- X

FUJI PHOTO FILM U.S.A., INC.,

           **Plaintiff,**

       - against -

SCOTT F. McNULTY, LORI S.
McNULTY, a/k/a LORI STRAUB,
MICHAEL C. CONNELL, FRANK
FRANZE, DWAIN K. TAYLOR, ADK
AMERICA, INC., AWOL, ESSENTIAL
COMMUNICATIONS & INK LLC,
REVOLUTIONARY GRAPHICS, INC.,
and THE WINDWOOD GROUP LLC,

          **Defendants.**

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/17/09

**OPINION AND ORDER**

**05 Civ. 7869 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

       Fuji Photo Film U.S.A. ("Fuji") brings this action alleging mail and wire fraud and commercial bribery in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"),[1] common law fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.  All

------

[1]    18 U.S.C. §§ 1962(c)-(d).

1

defendants have moved to dismiss the Complaint.[2]  For the reasons discussed below, the ADK defendants' motion is granted with respect to Taylor, but denied as to ADK.  The Windwood defendants' motion to dismiss Fuji's substantive RICO claim is granted with respect to Windwood, but denied as to Franze.  All other defendants' motions are denied.

## II.   BACKGROUND[3]

### A.   The Defendants

Scott McNulty ("McNulty") worked for Fuji from September 1992 to February 2004, holding a variety of managerial positions within Fuji's Computer Products Division ("CPD").[4]  At all times relevant to the Complaint, McNulty was responsible for the CPD's advertising and marketing campaigns, including the division's promotional rebate programs.[5]

---

[2]    Five motions to dismiss the Complaint were filed by the following groups of defendants: (1) Scott McNulty; (2) Lori McNulty, AWOL, and Revolutionary Graphics, Inc. ("RG") (collectively the "AWOL defendants"); (3) Michael Connell and Essential Communications & Ink LLC ("ECI") (collectively the "ECI defendants"); (4) Frank Franze and The Windwood Group LLC ("Windwood") (collectively the "Windwood defendants"); and (5) Dwain Taylor and ADK America, Inc. ("ADK") (collectively the "ADK defendants").

[3]    The following allegations are drawn from the Complaint and are presumed to be true for the purposes of defendants' motions.

[4]    *See* Complaint ("Compl.") ¶ 2.

[5]    *See id.*

Lori McNulty, McNulty's wife, is the owner of defendant AWOL and the owner and president of defendant RG.[6] AWOL is a business entity organized under the laws of Connecticut.[7] RG is a corporation organized under the laws of Delaware with its principal place of business in Connecticut.[8]

Michael Connell is the owner of defendant ECI.[9] ECI is a limited liability company organized under the laws of New Jersey with its principal place of business in New Jersey.[10]

Frank Franze is the vice president of RG and the president and CEO of defendant Windwood.[11] Windwood is a limited liability company organized under the laws of Connecticut with its principal place of business in Connecticut.[12]

Dwain Taylor is the president of defendant ADK.[13] ADK, a

---

[6]     *See id.* ¶ 3.

[7]     *See id.* ¶ 8.

[8]     *See id.* ¶ 10.

[9]     *See id.* ¶ 38. Fuji also alleges that Connell is the vice president of ECI. *See id.* ¶ 4.

[10]    *See id.* ¶ 9.

[11]    *See id.* ¶ 5.

[12]    *See id.* ¶ 11.

[13]    *See id.* ¶ 6.

subsidiary of a Japanese entity, Asatsu, Inc., is a corporation organized under the laws of California with an office in New York City.[14]

## B.    The Complaint

The Complaint alleges that McNulty coordinated a series of schemes designed to defraud Fuji.[15] These alleged schemes involved outside vendors that McNulty retained on Fuji's behalf to perform various promotional services.[16] The Complaint alleges that McNulty directed AWOL, ADK, RG, and ECI to submit invoices to Fuji for services that were never performed.[17] The Complaint further alleges that ECI and Windwood substantially overcharged Fuji for rebate processing services.[18] Finally, the Complaint alleges that ADK, ECI, and Windwood paid bribes to McNulty in return for McNulty sending them Fuji's business.[19] Fuji alleges that the defendants' actions resulted in damages of at least

---

[14]    *See id.* ¶ 7.

[15]    *See id.* ¶ 14.

[16]    *See id.*

[17]    *See id.* ¶¶ 15-16.

[18]    *See id.* ¶ 17.

[19]    *See id.* ¶ 18.

$12,500,000, before trebling and exclusive of punitive damages.[20]

### C.    The Alleged Schemes

#### 1.    AWOL Direct Billing Scheme

From March 1995 to June 1998, McNulty retained AWOL to perform advertising and marketing services for the CPD.[21]  During this period, AWOL regularly submitted invoices to Fuji for services that were never performed.[22]  In violation of his fiduciary duty, McNulty induced Fuji to pay the fraudulent invoices.[23]  The sum of all AWOL invoices for the three year period was $455,011.[24]

#### 2.    Indirect Billing Schemes

From 1999 to 2003, McNulty used ADK to bill Fuji for services purportedly performed by RG and ECI.[25]  At McNulty's direction, RG and ECI

---

[20]    *See id.* ¶ 19.

[21]    *See id.* ¶¶ 24, 26.

[22]    *See id.* ¶ 26.

[23]    *See id.* ¶ 28.

[24]    *See id.* ¶ 27.

[25]    *See id.* ¶ 31.

submitted fraudulent invoices to ADK.[26]  ADK then submitted its own invoices to

Fuji, reflecting the amounts of RG's and ECI's invoices as well as ADK's own

seventeen percent mark-up.[27]  McNulty also induced Fuji to pay these invoices,

which included indirect payments to RG and ECI of $6,777,611 and $3,305,293

respectively.[28]

### 3.    ADK Ticket Scheme

From 2002 to 2003, ADK also submitted invoices to Fuji that

reflected the costs of ticket purchases to various sporting and entertainment events

that ADK made on McNulty's behalf.[29]  The sum of all ADK invoices for this

period was $400,000, a portion of which was for ticket purchases made at

McNulty's direction.[30]

### 4.    ECI Direct Billing Scheme

From December 2002 to September 2003, ECI submitted invoices to

---

[26]    *See id.* ¶¶ 32, 40.

[27]    *See id.* ¶¶ 31, 40.

[28]    *See id.* ¶¶ 35, 42.

[29]    *See id.* ¶¶ 44-46.

[30]    *See id.* ¶ 47.

6

Fuji for services it had purportedly performed.[31]  McNulty caused Fuji to pay these

fraudulent invoices, and in return, ECI paid McNulty over $1,000 for securing this

arrangement.[32]

### 5.    Rebate Schemes

From December 2000 to March 2004, McNulty retained ECI and

Windwood to provide rebate processing services for Fuji.[33]  ECI and Windwood

both charged Fuji above-market rates for their services after representing that their

rates were at or below a fair market rate.[34]  Fuji paid ECI and Windwood

$1,800,000 and $1,600,000 respectively for their services, a portion of which was

due to the defendants' inflated rates.[35]  In return, ECI and Windwood each paid

McNulty over $1,000 for his provision of Fuji's business.[36]

## III.   APPLICABLE LAW

### A.    Motion to Dismiss

---

[31]     *See id.* ¶¶ 49-50.

[32]     *See id.* ¶ 50.

[33]     *See id.* ¶¶ 51, 57.

[34]     *See id.* ¶¶ 55, 63.

[35]     *See id.* ¶¶ 56, 64.

[36]     *See id.*

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the court must "accept as true all of the factual

allegations contained in the complaint"[37] and "draw all reasonable inferences in

the plaintiff's favor."[38]  However, the court need not accord "[l]egal conclusions,

deductions or opinions couched as factual allegations . . . a presumption of

truthfulness."[39]

To survive a 12(b)(6) motion to dismiss, the allegations in the

complaint must meet a standard of "plausibility."[40]  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."[41]

Plausibility "is not akin to a probability requirement," rather plausibility requires

---

[37]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 572 (2007).  *Accord
Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[38]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298
(2d Cir. 2006).

[39]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)
(quotation omitted).

[40]     *See Twombly*, 550 U.S. at 564.

[41]     *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009)
(quotation omitted).

"more than a sheer possibility that a defendant has acted unlawfully."[42]  Pleading a

fact that is "merely consistent with a defendant's liability" does not satisfy the

plausibility standard.[43]

## B.    RICO

A plaintiff claiming a civil RICO violation must allege "(1) a

violation of the RICO statute, [section] 1962; (2) an injury to business or property;

and (3) that the injury was caused by the violation of [s]ection 1962."[44]  In

considering civil RICO claims, a court must be mindful of the devastating effect

such claims may have on defendants.[45]  Civil RICO should not be used to

transform a "garden variety fraud or breach of contract case[] . . . into a vehicle for

treble damages."[46]

---

[42]     *Id.* (quotation omitted).

[43]     *Id.* (quotation omitted).

[44]     *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d
Cir. 2008) (quoting *De Falco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).

[45]     *See Kirk v. Heppt*, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006)
("Because the mere assertion of a RICO claim . . . has an almost inevitable
stigmatizing effect on those named as defendants, . . . courts should strive to flush
out frivolous RICO allegations at an early stage of the litigation.") (citations and
quotation marks omitted).

[46]     *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000).
*Accord Kirk*, 423 F. Supp. 2d at 149 (courts "must be wary of putative civil RICO
claims that are nothing more than sheep masquerading in wolves' clothing");

9

## 1.   Enterprise

A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[47] The RICO enterprise must be "'an entity separate and apart from the pattern of activity in which it engages.'"[48] "In other words, the 'enterprise' must not be just a name for the crimes [its] members committed."[49] "In perhaps its least developed form, an enterprise may be found where there is simply a discrete economic association existing separately from the racketeering activity."[50] A party must plead the existence of a RICO enterprise in accordance with Rule 8(a) of the Federal Rules of Civil Procedure.[51]

---

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (because civil RICO "is an unusually potent weapon – the litigation equivalent of a thermonuclear device . . . courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb").

[47]   18 U.S.C. § 1961(4).

[48]   *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

[49]   *United States v. Smith*, 413 F.3d 1253, 1267 (10th Cir. 2005).

[50]   *First Capital Asset Mgmt.*, 385 F.3d at 173 (citations and quotation marks omitted).

[51]   *See Sony Music Entm't Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406, at *6 (S.D.N.Y. Feb. 26, 2002) (citation omitted).

## 2.    Operation or Management

To state a valid claim under section 1962, a plaintiff must plead more than the mere existence of a RICO enterprise.[52]  A plaintiff must also allege that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."[53]  The "operation or management" test expresses the "conducting or participating" requirement of section 1962(c).[54]  Under this test, a defendant "is liable only if he 'participated in the operation or management of the enterprise itself.'"[55]

The Second Circuit has observed that the "operation or management" test "has proven to be a relatively low hurdle for plaintiffs to clear . . . especially at the pleading stage."[56]  While a defendant must have had "some part in directing [the enterprise's] affairs . . . the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited

---

[52]     *See First Capital Asset Mgmt.*, 385 F.3d at 175.

[53]     18 U.S.C. § 1962(c).

[54]     *See First Capital Asset Mgmt.*, 385 F.3d at 176.

[55]     *Id.* at 175 (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994)).

[56]     *Id.* at 176 (collecting cases).

11

to those with a formal position in the enterprise."[57]  Thus, "[a]n enterprise also

might be 'operated' or 'managed' by others 'associated with' the enterprise who

exert control over it as, for example, by bribery."[58]  A defendant who "has

discretionary authority in carrying out the instructions of the [conspiracy's]

principals" also exercises "operation and control" over the enterprise.[59]

### 3.    Pattern of Racketeering Activity

#### a.    Mail Fraud and Wire Fraud

To plead a "pattern" of racketeering activity, a plaintiff must allege at

least two predicate acts of racketeering activity occurring within a ten-year

period.[60]  "The elements of mail and wire fraud are (i) a scheme to defraud (ii) to

get money or property, (iii) furthered by the use of interstate mail or wires."[61]  As

to the first element, a plaintiff must demonstrate "(i) the existence of a scheme to

defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the

---

[57]    *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

[58]    *Id.* at 184.

[59]    *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (quotation omitted).

[60]    18 U.S.C. § 1961(5).

[61]    *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (citations omitted).

defendant, and (iii) the materiality of the misrepresentations."[62]

Mail and wire fraud must be pled with particularity in accordance with Rule 9(b).[63] "Because Rule 9(b) requires a plaintiff to state on the record the specific nature of the fraud, fraud allegations may not be based upon information and belief."[64] However, the heightened pleading requirements of Rule 9(b) may be relaxed "when the facts underlying the fraud are peculiarly within [the] opposing party's knowledge."[65] "[T]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."[66] Where a plaintiff is permitted to plead on information and belief, the "complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard."[67]

---

[62]   *Id.* (citations omitted).

[63]   *See Spool*, 520 F.3d at 184-85 (citation omitted).

[64]   *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748, 2006 WL 278138, at *6 (S.D.N.Y. Feb. 2, 2006) (citing *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

[65]   *Id.*

[66]   *Wood ex rel. United States v. Applied Research Assocs.*, No. 08 Civ. 3799, 2009 WL 2030240, at *2 n.1 (2d Cir. July 13, 2009) (quotation omitted). *Accord Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

[67]   *Wood*, 2009 WL 2030240, at *2 n.1 (quotation omitted).

13

When a plaintiff asserts that "the mail or wire transmissions were

themselves fraudulent . . . the complaint should specify the fraud involved,

identify the parties responsible for the fraud, and where and when the fraud

occurred."[68] However, when a plaintiff alleges that "the mail or wire fraud was

only used in furtherance of a scheme to defraud, then the complaint does not have

to be as specific with respect to each allegation of mail or wire fraud, so long as

the RICO scheme is sufficiently pled to give notice to the defendants."[69]

### b. Commercial Bribery

For commercial bribery to constitute a predicate act, it must be

chargeable under state law.[70] New York State Penal Law section 180.03 provides:

> A person is guilty of commercial bribing in the first degree
> when he confers, or offers or agrees to confer, any benefit
> upon any employee, agent or fiduciary without the consent
> of the latter's employer or principal, with intent to
> influence his conduct in relation to his employer's or
> principal's affairs, and when the value of the benefit
> conferred or offered or agreed to be conferred exceeds one
> thousand dollars and causes economic harm to the
> employer or principal in an amount exceeding two hundred

---

[68] *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 498 (S.D.N.Y. 2007) (citation and quotation marks omitted).

[69] *Id.* (citation and quotation marks omitted). *Accord AMA v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 442 (S.D.N.Y. 2008).

[70] *See* 18 U.S.C. § 1961(1).

14

fifty dollars.[71]

The pleading of bribery is governed by the more lenient pleading standard of Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[72]  However, "[t]he requirements of Rule 8(a) are not satisfied by a bare bones statement of the legal claim without any supporting facts."[73]

### c.    Continuity

The predicate acts alleged by the plaintiff must be related and continuous.[74]  The "'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern — a series of related predicate acts extending over a substantial period of time — or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the

---

[71]     N.Y. Penal Law § 180.03.  Section 180.08 prohibits the receiving of bribes under the same circumstances detailed in Section 180.03.

[72]     Fed. R. Civ. P. 8(a)(2).  *See also Rosner v. Bank of China,* 528 F. Supp. 2d 419, 429 (S.D.N.Y. 2007) ("[T]he heightened pleading requirements of Rule 9(b) apply only to RICO predicate acts based on fraud or mistake.") (citation omitted).

[73]     *Benedict v. Amaducci*, No. 92 Civ. 5239, 1995 WL 413206, at *10 (S.D.N.Y. July 12, 1995).

[74]     *See Spool*, 520 F.3d at 183.

period during which the predicate acts were performed."[75]

"Although factors such as the number and variety of predicate acts

and the number of participants may be germane to this showing, closed-ended

continuity is primarily a temporal concept."[76] "Notably, [the Second Circuit] has

never found a closed-ended pattern where the predicate acts spanned fewer than

two years."[77] Nevertheless, "the mere fact that predicate acts span two years is

insufficient, without more, to support a finding of a closed-ended pattern."[78] The

court must evaluate whether there is closed-ended continuity with respect to each

defendant individually.[79]

---

[75]     *Id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241
(1989)).

[76]     *Id.* (quotation omitted). *Accord First Capital Asset Mgmt.*, 385 F.3d
at 181 ("Although continuity is primarily a temporal concept, other factors such as
the number and variety of predicate acts, the number of both participants and
victims, and the presence of separate schemes are also relevant in determining
whether closed-ended continuity exists.") (citation and quotations marks omitted).

[77]     *First Capital Asset Mgmt.*, 385 F.3d at 181. *See also Kurins v.
Silverman*, No. 08 Civ. 6886, 2009 WL 321011, at *4 (S.D.N.Y. Feb. 11, 2009).

[78]     *Id.*

[79]     *See id.* at 180 ("In analyzing the issue of continuity, assuming
arguendo that the alleged predicate acts constituting the pattern were adequately
pled, we evaluate the RICO allegations with respect to each defendant
individually.") (citing *De Falco*, 244 F.3d at 322 n.22; *United States v. Persico*,
832 F.2d 705, 714 (2d Cir. 1987)).

16

## 4. Statute of Limitations

"Civil RICO claims are subject to a four-year statute of limitations

that begins to run when the plaintiff discovers or should have discovered the

RICO injury."[80] "The Second Circuit . . . has adopted a 'separate accrual rule,'

under which a 'new claim accrues and the four-year limitation period begins anew

each time a plaintiff discovers or should have discovered a new and independent

injury.'"[81] However, "[p]ursuant to this rule, a plaintiff who is continuously

injured by an underlying RICO violation may only recover for injuries discovered

or discoverable within four years of the time suit is brought."[82]

## C. RICO Conspiracy

Section 1962(d) makes it unlawful to conspire to violate any of the

---

[80]    *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2d Cir. 2002) (quotation omitted).

[81]    *World Wrestling Entm't*, 530 F. Supp. 2d at 524 (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998)). *Accord Apollon Waterproofing & Restoration v. Bergassi*, No. 01 Civ. 8388, 2003 WL 1397394, at *3 (S.D.N.Y. Mar. 20, 2003).

[82]    *Id.* (citations omitted). *Accord Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) ("As long as separate and independent injuries continue to flow from the underlying RICO violations — regardless of when those violations occurred — plaintiff may wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within the four-year 'window' before suit was filed, together, of course, with any provable future damages.").

17

substantive provisions of RICO.[83] "To state a claim under [section] 1962(d), a

plaintiff must plead as to each alleged co-conspirator: (1) an agreement to join the

conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy;

[and] (3) that the co-conspirator knowingly participated in the same."[84]  A

defendant's consent to join a RICO conspiracy may be "manifested by an assent to

commit predicate acts of racketeering," or "inferred from circumstantial evidence

of the defendant's status in the enterprise or knowledge of the wrongdoing."[85]

Additionally, a plaintiff's RICO conspiracy claim fails if the plaintiff's substantive

RICO claims are deficient.[86]

### D.    Fraud

"The elements of fraud under New York law are: (1) a

misrepresentation or a material omission of material fact which was false and

known by [the] defendant to be false, (2) made for the purpose of inducing the

---

[83]     *See* 18 U.S.C. § 1962(d).  *See also Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 303 (S.D.N.Y. 2000).

[84]     *Odyssey*, 85 F. Supp. 2d at 303 (citation omitted).

[85]     *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 488 (S.D.N.Y. 1997) (citations and quotation marks omitted).

[86]     *See First Capital Asset Mgmt.*, 385 F.3d at 164; *Cont'l Fin. Co. v. Ledwith*, No. 08 Civ. 7272, 2009 WL 1748875, at *6 (S.D.N.Y. June 22, 2009); *World Wrestling Entm't*, 530 F. Supp. 2d at 530; *Rosner*, 528 F. Supp. 2d at 428.

plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then

suffered an injury as a result of such reliance."[87]  A complaint alleging fraud must

satisfy Rule 9(b)'s requirement that "the circumstances constituting fraud . . . be

stated with particularity."[88]  To comply with the requirements of Rule 9(b), a

plaintiff must: "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."[89]  "Allegations that are

conclusory or unsupported by factual assertions are insufficient."[90]

### E.    Conspiracy to Defraud

"It is well settled under New York law that there is no substantive tort

of conspiracy."[91]  Therefore, to state a common law conspiracy claim, a plaintiff

must allege "both a primary tort and also show the four elements of a conspiracy:

---

[87]    *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008) (quotation omitted).

[88]    Fed. R. Civ. P. 9(b). *Accord ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[89]    *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation omitted). *Accord ATSI*, 493 F.3d at 99 (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

[90]    *ATSI*, 493 F.3d at 99. *Accord Rosner*, 528 F. Supp. 2d at 425.

[91]    *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001).

19

(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."[92]

### F.    Aiding and Abetting Breach of Fiduciary Duty

"A claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that [the] plaintiff suffered damage as a result of the breach."[93]   A defendant "knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator."[94]   "Substantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."[95]

## IV.   DISCUSSION

### A.    RICO

---

[92]    *Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 429 (S.D.N.Y. 2008) (quotation omitted).

[93]    *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006) (quotation omitted).

[94]    *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 50 (2d Cir. 2005) (citation and quotation marks omitted).

[95]    *Id.* (citation and quotation marks omitted).

## 1.    Enterprise

The Complaint pleads two RICO enterprises: (1) the CPD, and (2) an

association-in-fact consisting of all defendants and the CPD.[96]  Defendants argue

that as a division of Fuji, the CPD was not a separate entity from the Fuji

corporation, and therefore was not a "legal entity" capable of constituting a RICO

enterprise. Alternatively, defendants argue that as a victim of the alleged RICO

conduct, the CPD cannot also be the offending RICO enterprise.[97]  However, as

the Complaint pleads a valid association-in-fact enterprise, there is no need to

address defendants' arguments regarding the CPD.[98]

The alleged association-in-fact has a clear structure.  McNulty was

---

[96]    *See* Compl. ¶¶ 72-73.

[97]    Defendants argue that the Third Circuit has held that enterprise
allegations fail if the victim and the enterprise are the same entity. *See Jaguar
Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 267 (3d Cir. 1995).
Fuji correctly notes that the Second Circuit has not adopted this position and cites
several district court decisions that decline to follow *Jaguar Cars*. *See, e.g.,
Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*,156 F. Supp. 2d
376, 383 n.6 (S.D.N.Y. 2001); *Hansel 'N Gretel Brand, Inc., v. Savitsky*, No. 94
Civ. 4027, 1997 WL 543088, at *3 (S.D.N.Y. Sept. 3, 1997).

[98]    I note, however, that the Supreme Court has recently embraced an
expansive definition of a RICO enterprise. *See Boyle v. United States*, — U.S. —,
129 S. Ct. 2237, 2243 n.2 (June 8, 2009) (concluding that section 1961(4) "does
not foreclose the possibility that the term might include, in addition to the
specifically enumerated entities, others that fall within the ordinary meaning of the
term 'enterprise'").

the heart of the enterprise and at all relevant times exercised authority and control

over the CPD.  McNulty used his influence within the CPD to retain a collection

of outside vendors, most of which were single-person entities owned and operated

by McNulty's wife and friends.  The Complaint alleges that the association-in-fact

performed as a continuing unit that engaged in predicate acts of fraud and

commercial bribery over a nine-year period.[99]  The Complaint further alleges that

the association-in-fact was united by a common purpose, namely that of

defrauding Fuji.[100]  Accordingly, Fuji has sufficiently pled a RICO enterprise

under Rule 8(a).

### 2.    Operation or Management

Several defendants argue that the Complaint fails to plead that they

exercised control over the alleged RICO enterprise.  Specifically, defendants

contend that because the Complaint alleges that each predicate act was carried out

at McNulty's direction, Fuji has satisfied the operation or management

requirement only as to McNulty.  But defendants misconstrue Fuji's burden with

respect to pleading operation or management of the alleged RICO enterprise.  The

Supreme Court has held that "an enterprise is 'operated' not just by upper

---

[99]    *See* Compl. ¶¶ 76-78.

[100]    *See id.* ¶ 80.

22

management but also by lower rung participants in the enterprise who are under the direction of upper management."[101]  At a minimum, the Complaint alleges that the defendants exercised discretion in carrying out McNulty's directions.  The AWOL, RG, ECI, and ADK defendants exercised discretion in preparing and submitting fictitious invoices to Fuji.  Likewise, the ECI and Windwood defendants exercised discretion when they set the rates for their rebate processing services.

### 3.    Pattern of Racketeering

#### a.    Predicate Acts of Mail and Wire Fraud

Defendants argue that Fuji has failed to plead predicate acts of mail and wire fraud with the specificity required by Rule 9(b).  As Fuji must plead fraud with particularity as to each defendant,[102] I address Fuji's allegations with respect to each defendant in turn.

#### i.    AWOL Defendants

##### (a).    Lori McNulty

The Complaint alleges that Lori McNulty is the owner of AWOL and

---

[101]   *Reves*, 507 U.S. at 184.

[102]   *See Odyssey*, 85 F. Supp. 2d at 293.

23

the owner and president of RG.[103]  Both AWOL and RG are small, one and two-

person entities, whose corporate identities consist of little more than the acts of

their corporate officers.  The Complaint alleges that Lori McNulty had a

controlling interest in both corporations.[104]  Therefore, to the extent that Fuji's

allegations are sufficient as to AWOL and RG, they are also sufficient with respect

to Lori McNulty.

### (b).    AWOL Direct Billing Scheme

Fuji has met its pleading burden with respect to the AWOL billing

scheme.  The Complaint alleges that many of the services for which AWOL billed

Fuji were never performed.[105] Although the Complaint does not identify the

specific invoice descriptions that pertain to unperformed services, Fuji has

provided a schedule of all invoices submitted by AWOL.[106]  Additionally, Fuji

alleges that McNulty was its only employee with direct knowledge of the invoices

at issue, and that McNulty retained AWOL in violation of Fuji's standards of

---

[103]     *See* Compl. ¶¶ 25, 30.

[104]     *See id.* ¶¶ 25, 37.

[105]     *See id.* ¶ 26.

[106]     *See id.* Ex. A.

24

employee conduct.[107]

### (c).   RG Indirect Billing Scheme

Fuji has also met its burden with respect to the RG billing scheme.

Fuji alleges that none of the services for which RG billed Fuji were ever

performed.[108]  The Complaint pleads facts that describe both the mechanics of the

scheme and the function of the invoices within the scheme.[109]  Additionally, Fuji

has provided a list of all invoices that it claims pertain to unperformed services.[110]

Finally, Fuji alleges that McNulty was responsible for retaining RG, a decision

which he knew constituted a breach of his fiduciary duty to Fuji.[111]

### ii.   ECI Defendants

### (a).   Connell

The Complaint alleges that Connell is the owner of ECI.[112]  The

---

[107]   *See id.* ¶¶ 24, 28.  *See also* Transcript of 1/4/06 Oral Argument ("Tr.") at 53.

[108]   *See* Compl. ¶ 32.

[109]   *See id.* ¶¶ 31-34.

[110]   *See id.* Exs. B, C.

[111]   *See id.* ¶¶ 24, 37.

[112]   *See id*. ¶ 38.  Fuji also alleges that Connell is the vice president of ECI.  *See id.* ¶ 4.  These pleadings appear inconsistent since Fuji also alleges that ECI was a single-person corporation.  *See id.* ¶ 60. Regardless of Connell's actual

25

Complaint further alleges that ECI is a single-person corporation, and that Connell exercised exclusive control over its operations.[113]  Therefore, to the extent that Fuji's allegations are sufficient as to ECI, they are also sufficient with respect to Connell.

### (b).   ECI Billing Schemes

Fuji has met its burden with respect to the ECI billing schemes.  The Complaint alleges that none of the services for which ECI billed Fuji, both directly and indirectly, were ever performed.[114]  Fuji identifies the invoices that it claims to be fraudulent.[115]  Additionally, the Complaint provides specific details regarding both the nature and operation of the schemes.[116]  Moreover, Fuji asserts that McNulty was responsible for retaining ECI, which was owned and operated by his long-time friend, Connell.[117]

### (c).   ECI Rebate Scheme

title, Fuji has sufficiently alleged that Connell exercised control over ECI's operations.

- [113]    *See id.* ¶¶ 38, 48, 60.
- [114]    *See id.* ¶¶ 39, 50.
- [115]    *See id.* Exs. D, E, G.
- [116]    *See id.* ¶¶ 39-41, 49-50.
- [117]    *See id.* ¶¶ 38, 49.

26

Fuji's allegations are also sufficient with respect to the ECI rebate

scheme. While the Complaint does not include a schedule of invoices for the

scheme, Fuji's allegations of overcharging are sufficient.[118]  The Complaint states

the price that ECI charged per rebate, the price generally charged in the market,

and the total amount that Fuji paid ECI in fees.[119]  The Complaint also alleges that

McNulty retained ECI and that Fuji had no reason to doubt McNulty's loyalty as

head of the CPD's advertising and marketing campaigns.[120]

### iii.    Windwood Defendants

#### (a).    Franze

The Complaint alleges that Franze is the president and CEO of

Windwood as well as the vice president of RG.[121]  Both Windwood and RG are

small corporations. Franze is Windwood's only employee, and although Lori

McNulty is the owner of RG, Fuji has pled sufficient facts to suggest that Franze,

---

[118]     The Second Circuit has held that allegations of overcharging can
suffice as predicate RICO acts. *See Cosmos Forms Ltd. v. Guardian Life Ins. Co.
of Am.*, 113 F.3d 308, 310 (2d Cir. 1997).

[119]     *See* Compl. ¶¶ 54, 56.

[120]     *See id.* ¶¶ 21-22, 38.

[121]     *See id.* ¶¶ 5, 59-60.  Franze is also Lori McNulty's neighbor and Scott
McNulty's friend. *See id.* ¶ 30.

as the vice president of RG, exercised control over its operations.[122]  As I have

already determined that Fuji's allegations are sufficient as to RG, Fuji's

allegations are also sufficient with respect to Franze.

### (b).    Windwood Rebate Scheme

Fuji's allegations of fraud are similarly sufficient with respect to the

Windwood rebate scheme.  Although Fuji has not provided a schedule of invoices

for this scheme, the Complaint alleges that Windwood substantially overcharged

Fuji for its rebate processing services.[123]  The Complaint states the price that Fuji

paid per rebate, the average rate charged by other rebate processing houses, and

the total amount that Fuji paid Windwood in fees.[124]  The Complaint also alleges

that McNulty was responsible for retaining Windwood, which he knew to be a

single-person entity owned by Franze — his friend and neighbor.[125]

### iv.    ADK Defendants[126]

---

[122]    *See id.* ¶ 60.

[123]    *See id.* ¶ 63.

[124]    *See id.* ¶¶ 54, 56.

[125]    *See id.* ¶¶ 59-60.

[126]    In addition to their brief, the ADK defendants submitted an affidavit
from Taylor and several exhibits (invoices and emails) in support of their motion
to dismiss.  These documents cannot be considered. *See Friedl v. City of New
York*, 210 F.3d 79, 84 (2d Cir. 2000) ("[A] district court errs when it considers

28

## (a).   Taylor

The ADK defendants argue that while Fuji's allegations are deficient as to all defendants, they are particularly insufficient with respect to Taylor. Specifically, defendants contend that the Complaint fails to plead any facts regarding: (1) any acts committed by Taylor; (2) whether Taylor was aware that any of the invoices submitted by ADK were false; or (3) whether Taylor was aware of other defendants' actions.

The Complaint initially alleges that Taylor is the president of ADK.[127] All subsequent references mention Taylor only as one in a string of multiple defendants, always including ADK.  Notably, Taylor is not mentioned once with respect to the alleged ticket scheme, the only scheme in which ADK is alleged to have participated exclusively with McNulty.

Unlike the other corporate defendants, ADK is not a small, one or two-person operation.  It is therefore neither reasonable nor fair to impute the

---

affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (citations and quotations marks omitted).

[127]   *See* Compl. ¶ 6.

actions of ADK to Taylor.[128]  Accordingly, the ADK defendants' motion to dismiss the Complaint is granted with respect to Taylor.

### (b).    ADK Indirect Billing Schemes

Fuji's allegations of fraud are sufficient with respect to the ADK indirect billing schemes.  The Complaint alleges that ADK submitted invoices for services purportedly provided by RG and ECI, but which Fuji maintains were never performed.[129]  The Complaint further alleges that ADK was aware of this when it submitted the invoices, but nonetheless added an additional seventeen percent mark-up to each invoice.[130]  The Complaint pleads facts describing the overall nature of the schemes as well as the role of the invoices within each scheme.[131]  Fuji has identified the specific invoices that it claims to be fraudulent and maintains that McNulty was its only employee with direct access to the invoices at issue.[132]

---

[128]    *See Odyssey*, 85 F. Supp. 2d at 296 ("Rule 9(b) is not satisfied by a complaint in which defendants are clumped together in vague allegations.") (citation and quotation marks omitted).

[129]    *See* Compl. ¶ 31.

[130]    *See id.* ¶¶ 40-41.

[131]    *See id.* ¶¶ 31-34, 39-41.

[132]    *See id.* Exs. B, C, D, E. *See also* Tr. at 53.

### (c).   ADK Ticket Scheme

Fuji's allegations are also sufficient with respect to the ADK ticket scheme. The Complaint alleges that at McNulty's direction, ADK purchased tickets to events and submitted false invoices that reflected the costs of these purchases but concealed the fact that the tickets were purchased.[133] Fuji has provided a schedule of the relevant invoices and alleged the time frame for the scheme.[134] Additionally, the Complaint pleads facts suggesting that Fuji reasonably relied upon McNulty's loyalty as an employee.[135]

### v.   Scott McNulty

The Complaint alleges that McNulty participated in every predicate act of mail and wire fraud. Accordingly, to the extent that Fuji has met its pleading burden with respect to each defendant, it has also met its burden with respect to McNulty.

### vi.   Pleading on Information and Belief

Defendants argue that Fuji's RICO claims are insufficient because many of the allegations in the Complaint are asserted "on information and belief."

---

[133]   *See* Compl. ¶¶ 44-46.

[134]   *See id.* ¶ 44, Ex. F.

[135]   *See id.* ¶¶ 20-22, 46,

31

Fuji, in turn, contends that the heightened pleading requirements of Rule 9(b) should be relaxed because the underlying details of the various schemes are peculiarly within the defendants' knowledge.[136] Additionally, Fuji asserts that it has pled sufficient facts to support a strong inference of fraud in connection with each of the alleged schemes.[137] I agree.

*First*, with respect to the alleged fictitious billing schemes and the ADK ticket scheme, Fuji has provided the dates, amounts, invoice numbers, and descriptions of all invoices that it claims pertain to unperformed services. Fuji has also provided detailed descriptions of the schemes, including the specific function of the invoices within each scheme. The Complaint alleges that each defendant acted with the specific intent to defraud Fuji. Additionally, Fuji asserts that McNulty was its only employee with direct knowledge of the invoices at issue and that it reasonably relied on McNulty's loyalty as employee.

*Second*, with respect to the purported rebate schemes, the Complaint alleges that ECI and Windwood each overcharged Fuji for rebate processing services after representing that their rates were at or below a fair market price.

---

[136]    *See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Complaint ("Pl. Mem.") at 26.

[137]    *See id.* at 25.

32

The Complaint further alleges that both defendants misrepresented their previous

rebate processing experience with the intent of deceiving Fuji into retaining them.

Although certain allegations are pled "on information and belief," the difference

between the average rate charged by other rebate fulfillment houses and the rates

charged by the defendants, together with the fact that it was McNulty who retained

the defendants, suffice as the necessary statement of facts upon which Fuji's

pleadings are based.

### b.    Predicate Acts of Commercial Bribery

As an alternative source of predicate acts, Fuji claims that the ECI,

ADK, and Windwood defendants bribed McNulty in violation of New York Penal

Law sections 180.03 and 180.08.  Defendants argue that the bribery allegations are

too conclusory to satisfy even the liberal pleading standard of Rule 8(a).

Fuji's allegations of commercial bribery are insufficient in that they

merely recite the language of the bribery statute.[138]  While Fuji correctly notes that

its allegations must only satisfy the notice pleading requirement of Rule 8(a),[139]

the Complaint's conclusory allegations fail to adequately serve even the purpose

---

[138]    *See* Compl. ¶ 78 (alleging that defendants paid McNulty bribes "in
excess of $1,000, all without knowledge, and for the purpose of influencing
McNulty's conduct in relation to Fuji's affairs").

[139]    *See* Pl. Mem. at 28.

33

of notice. Fuji does not plead any facts regarding how much was paid, when it was paid, or how it was delivered. Additionally, while Fuji alleges total damages of at least $12,500,000, it does not allege that each individual act of bribery "cause[d] economic harm to the employer or principal in an amount exceeding two hundred fifty dollars."[140] Accordingly, Fuji's allegations of bribery are deficient with respect to all defendants.

### c.    Continuity

Defendants also argue that Fuji has failed to plead a closed-ended pattern of racketeering. To determine whether Fuji has properly alleged continuity, the Court must "evaluate the RICO allegations with respect to each defendant individually."[141]

### i.    AWOL Defendants

### (a).    AWOL

The Complaint alleges that AWOL participated in a billing scheme that lasted from March 1995 to June 1998,[142] longer than the two years traditionally required to establish closed-ended continuity. The scheme involved

---

[140]    N.Y. Penal Law §§ 180.03, 180.08.

[141]    *First Capital Asset Mgmt.*, 385 F.3d at 181 (citations omitted).

[142]    *See* Compl. ¶ 26.

34

numerous predicate acts and multiple participants, including both corporate and

individual defendants.  It also shared overlapping personnel with other schemes.

While Fuji was the only alleged victim of the scheme, this fact by itself does not

preclude a finding of continuity.[143]  Accordingly, the Complaint sufficiently pleads

closed-ended continuity with respect to AWOL.

### (b).   RG

The Complaint alleges that RG participated in an indirect billing

scheme that lasted from 1999 to 2003,[144] substantially longer than the Second

Circuit's two-year benchmark.  The scheme involved numerous predicate acts and

multiple participants, including both corporate and individual defendants.  It also

shared overlapping personnel with other schemes.  Accordingly, the Complaint

sufficiently pleads closed-ended continuity with respect to RG.

### (c).   Lori McNulty

As the Complaint sufficiently alleges that Lori McNulty exercised

control over RG, Fuji has also adequately pled closed-ended continuity with

respect to Lori McNulty.

---

[143]     *See Kurins*, 2009 WL 321011, at *14-15 ("Where, as here, the
allegations span a period of significantly more than two years, the presence or
absence of the other factors is less critical.") (quotation omitted).

[144]     *See* Compl. ¶ 32.

35

### ii.    ECI Defendants

#### (a).    ECI

The Complaint alleges that ECI participated in three separate

schemes: (1) an indirect billing scheme from 1999 to 2003; (2) a direct billing

scheme from 2002 to 2003; and (3) a rebate scheme from 2000 to 2003.[145]  Each

scheme involved a different methodology and was comprised of countless

predicate acts.  Additionally, all three schemes had multiple participants, including

both corporate and individual defendants, as well as several common players.

Therefore, Fuji has satisfied the continuity requirement with respect to ECI.

#### (b).    Connell

As the Complaint adequately alleges that Connell exercised control

over ECI, Fuji has also sufficiently pled closed-ended continuity with respect to

Connell.

### iii.    Windwood Defendants

#### (a).    Windwood

The Complaint alleges that Windwood participated in a rebate scheme

that lasted from April 2003 to March 2004.  Because the alleged rebate scheme

---

[145]    *See id.* ¶¶ 40, 49-51, 55.  While the number of schemes is a factor to
be considered in determining continuity, the duration of each scheme need not
exceed the two-year benchmark.

36

lasted only eleven months, it is insufficient to establish closed-ended continuity.[146]
Accordingly, the Windwood defendants' motion to dismiss Fuji's substantive
RICO claim is granted as to Windwood.[147]

### (b).   Franze

As the Complaint sufficiently alleges that Franze exercised control
over RG, Fuji has also sufficiently pled closed-ended continuity with respect to
Franze.

### iv.   ADK

### (a).   ADK

---

[146]   *See First Capital Asset Mgmt.*, 385 F.3d at 181.  The Second Circuit
has recently noted that it may be possible to establish closed-ended continuity
where the alleged predicate acts span less than two years.  *See Spool*, 520 F.3d at
184 ("Although we have not viewed two years as a bright-line requirement, it will
be rare that conduct persisting for a shorter period of time establishes
closed-ended continuity, particularly where the activities alleged involved only a
handful of participants and do not involve a complex, multi-faceted conspiracy.")
(citation and quotation marks omitted).  Here, the alleged predicate acts spanned
only eleven months.  Additionally, the rebate scheme is the only scheme in which
Windwood allegedly participated.

[147]   Fuji's failure to plead closed-ended continuity does not result in the
dismissal of either Windwood defendant.  *First*, the Complaint still alleges that
both Windwood defendants engaged in a RICO conspiracy in violation of 18
U.S.C. § 1962(d).  Although Fuji's substantive RICO claim is dismissed with
respect to Windwood, Fuji's substantive RICO claims are not dismissed as to all
defendants.  *Second*, Franze may still be liable for a substantive RICO violation in
his capacity as vice president of RG.

37

The Complaint alleges that ADK was involved in three separate

schemes: (1) an indirect billing scheme involving RG that lasted from 1999 to

2003; (2) an indirect billing scheme involving ECI that lasted from 1999 to 2003;

and (3) a ticket scheme that lasted from 2002 to 2003.[148]  These schemes spanned a

combined total of four years and involved numerous predicate acts and several

overlapping participants.  Accordingly, the Complaint sufficiently pleads closed-

ended continuity with respect to ADK.

### (b).   Taylor

As I have already determined that Fuji's claims are insufficient with

respect to Taylor, there is no need to determine if the allegations against him

satisfy the continuity requirement.

### v.    Scott McNulty

The Complaint alleges that McNulty participated in all of the alleged

schemes, which spanned a combined total of nine years.  Many of the alleged

schemes employed different methodologies, and all of the schemes involved

multiple participants, including both individual and corporate defendants.

Additionally, most of the schemes shared a core of overlapping personnel.

Therefore, the Complaint sufficiently pleads a pattern of closed-ended continuity

---

[148]     *See* Compl. ¶¶ 32, 39, 44.

38

with respect to McNulty.

### 4. Statute of Limitations

As an alternative argument for dismissal, the ADK defendants assert

that many of Fuji's alleged predicate acts are barred by the statute of limitations.

Because Fuji filed its Complaint in September 2005, claims relating to acts that

occurred after September 2001 are not time-barred.  Fuji alleges that all of the

defendants' schemes, with the exception of the AWOL scheme, resulted in

separate and independent injuries that continued beyond September 2001.[149]

Therefore, Fuji's claims are timely under the separate accrual rule, though Fuji

may be unable to recover damages for acts that occurred prior to September 2001.

### C. RICO Conspiracy

As the majority of Fuji's RICO claims are sufficiently pled,

defendants' contention that Fuji's RICO conspiracy claims must fail for lack of an

adequately pled substantive violation is meritless.  However, because Fuji has not

---

[149]     Because the AWOL defendants do not assert that Fuji's RICO claims
are time-barred, the Court addresses this issue *sua sponte*.  Fuji argues that the
doctrine of fraudulent concealment operates to toll the statute of limitations, which
would then begin to run in 2004 when Fuji discovered or should have discovered
defendants' fraudulent acts.  The ADK defendants argue that fraudulent
concealment does not apply here, as Fuji should have been aware of its alleged
injuries by 1995, or at the latest 1998.  Because this dispute raises an issue of fact,
it cannot be resolved at the motion to dismiss stage.

stated a substantive RICO claim against Taylor, the conspiracy claim against

Taylor is dismissed.

Fuji's RICO conspiracy claims are sufficient with respect to all other

defendants. The Complaint alleges that the defendants were aware of the general

scope and nature of the conspiracy. The Complaint also alleges that the

defendants were aware that the conspiracy extended beyond their individual roles.

Indeed, with the exception of Taylor, Fuji asserts that all of the individual

defendants were either family or friends of McNulty. Additionally, the Complaint

pleads sufficient facts from which the acts of AWOL, RG, Windwood, and ECI

can reasonably be imputed to Lori McNulty, Franze, and Connell. Finally, the

Complaint alleges that the defendants were united by the common purpose of

defrauding Fuji. Accordingly, defendants' motions are denied as to Fuji's RICO

conspiracy claims.

### D.    Supplemental Jurisdiction

Because the majority of Fuji's RICO claims will proceed, this Court

will exercise supplemental jurisdiction over Fuji's state law claims.

### E.    Common Law Fraud

The AWOL defendants and ADK argue that Fuji's common law fraud

claims should be dismissed because Fuji has failed to meet the heightened

pleading requirements of Rule 9(b). However, as Fuji's RICO allegations are insufficient only as to Taylor, Fuji's common law fraud claim is dismissed only with respect to Taylor.

ADK and the Windwood defendants also argue that Fuji's fraud claims should be dismissed because they are actually dressed up breach of contract claims. *First*, ADK mischaracterizes its alleged conduct as a mere failure to fulfill a promise to provide good and services. The Complaint alleges that ADK submitted fictitious invoices for services purportedly performed by *other* companies, namely RG and ECI.[150] Therefore, Fuji's fraud claims are based on misrepresentations that were separate and distinct from any contractual relationship that existed between Fuji and ADK. *Second*, while there was a contract between Fuji and Windwood, Fuji's allegations of fraud are based on the misrepresentations that induced Fuji to retain Windwood, not the alleged individual acts of overcharging.[151] Accordingly, defendants' motions to dismiss

---

[150]    *See* Compl. ¶¶ 98-99.

[151]    *See id.* ¶ 128. *See also Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *3 (S.D.N.Y. Mar. 24, 2009) ("[W]hen a plaintiff is induced to enter into a contract by false representations, or by omissions, fraud lies in the inducement; it is thus separate from the breach of contract claim.") (citing *Stewart v. Jackson*, 976 F.2d 86, 88-89 (2d Cir. 1992).

Fuji's fraud claims are denied.

## F.   Conspiracy to Defraud

The AWOL defendants and ADK also argue that the Complaint fails

to plead that they agreed to participate in a conspiracy to defraud Fuji. This

argument fails because the Complaint alleges that AWOL, RG, and ADK all

participated with McNulty in schemes to defraud Fuji through the submission of

fictitious invoices.[152] Therefore, defendants' motions to dismiss Fuji's common

law conspiracy claim are denied.

## G.   Aiding and Abetting Breach of Fiduciary Duty

The AWOL defendants and ADK further argue that Fuji's aiding and

abetting breach of fiduciary duty claim should be dismissed because the Complaint

fails to plead: (1) that they had actual knowledge of McNulty's breach of his

fiduciary duty, or (2) that they provided substantial assistance to McNulty. Both

of these contentions are meritless. *First*, Fuji's Complaint pleads that both the

AWOL defendants and ADK were aware of McNulty's fraudulent acts.[153] *Second*,

the countless acts of fraud that the defendants allegedly committed suffice as the

---

[152]   *See id.* ¶ 34.

[153]   *See id.* ¶¶ 31, 34.

substantial assistance necessary to establish a claim for aiding and abetting breach
of fiduciary duty.

### H.    Statute of Limitations

Finally, ADK argues that many of Fuji's state law claims are barred
by the applicable statutes of limitations. However, with the possible exception of
Fuji's claims against AWOL, this contention is patently meritless. The governing
statute of limitations for each of Fuji's state law claims is six years.[154]
Accordingly, any claims relating to acts that occurred after September 1999 are
not time-barred. As only the AWOL billing scheme occurred entirely before
September 1999, and Fuji has asserted that the doctrine of fraudulent concealment
tolls the statute of limitations on all of its claims until 2004, ADK's motion to
dismiss Fuji's claims on statute of limitations grounds is denied.

### I.    Leave to Replead

"Rule 15(a) provides that, other than amendments as a matter of

---

[154]    *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164, 167 (1st Dep't 2003)
(noting that the applicable statute of limitations for both fraud and breach of
fiduciary duty where the underlying allegation is based on fraud is six years);
*Schlotthauer v. Sanders*, 545 N.Y.S.2d 197, 199 (2d Dep't 1989) (noting that a
civil conspiracy claim "is time barred when the substantive tort underlying it is
time barred").

43

course, a party may amend the party's pleading only by leave of court or by

written consent of the adverse party; and leave shall be freely given when justice

so requires."[155]  However, "whether to permit a plaintiff to amend its pleadings is a

matter committed to the Court's sound discretion."[156]  While "[i]t is the usual

practice upon granting a motion to dismiss to allow leave to replead,"[157] such leave

should be denied where the proposed amendment would be futile.

There is no reason to conclude that amendment would be futile with

respect to Fuji's claims against Taylor.  If Fuji is able to plead facts suggesting

that Taylor exercised control over ADK's operations, the Complaint's allegations

could be sufficient with respect to Taylor.  However, as even sufficient allegations

of commercial bribery would not satisfy the continuity requirement, amendment of

the substantive RICO claim against Windwood would be unavailing.  Therefore,

leave to amend is granted with respect to all claims against Taylor, but leave is

---

[155]    *Slayton v. Am. Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006)
(quotation marks omitted).

[156]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007) (quotation omitted).

[157]    *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6
(S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949
F.2d 42, 48 (2d Cir. 1991)).

denied with respect to the substantive RICO claim against Windwood.

## V.    CONCLUSION

For the foregoing reasons, the ADK defendants' motion is granted with respect to Taylor, but denied with respect to ADK.  The Windwood defendants' motion to dismiss the substantive RICO claim is granted with respect to Windwood, but denied with respect to Franze.  All other defendants' motions are denied.  Fuji is granted leave to file an amended complaint consistent with the terms of the Opinion within twenty days of this Order.  The Clerk of the Court is directed to close these motions (Docket Nos. 23, 27, 31, 34, and 36).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 17, 2009

## - Appearances -

### For Plaintiff Fuji Photo Film U.S.A., Inc.:

Joanna Andrea Diakos, Esq.
Sarah Peck Kenney, Esq.
David Scott Versfelt, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3991

### For Defendant Scott McNulty:

Alan Ross Pearlson, Esq.
Sills Cummis & Gross, P.C.
One Rockfeller Plaza
New York, New York 10020
(212) 643-5495

### For Defendants Lori McNulty, AWOL, and Revolutionary Graphics, Inc.:

Richard J. Schaeffer, Esq.
Dornbush, Mensch, Mandelstam & Schaeffer LLP
747 Third Avenue
New York, New York 10017
(212) 759-3300

### For Defendants Michael Connell and Essential Communication & Ink LLC:

David Lawrence Blank, Esq.
Schwartz Simon Edelstein Celso & Kessler LLP
Ten James Street
Florham Park, New Jersey 07932
(973) 301-0001

Henry Ellis Klingeman, Esq.
Krovatin Klingeman LLC
744 Broad Street, Suite 1903
Newark, New Jersey 07102
(973) 424-9777

**For Defendants Frank Franze and The Windwood Group LLC:**

Dan E. LaBelle, Esq.
Halloran & Sage LLP
315 Port Road West
Westport, Connecticut 06880
(203) 227-2855

**For Defendants Dwain Taylor and ADK America, Inc.:**

Michael S. Devorkin, Esq.
Shawn Preston Ricardo, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300