UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

FUJI PHOTO FILM U.S.A., INC.,

    **Plaintiff,**

   - against -

SCOTT F. McNULTY, LORI S.
McNULTY, a/k/a LORI STRAUB,
MICHAEL C. CONNELL, FRANK
FRANZE, DWAIN K. TAYLOR, ADK
AMERICA, INC., AWOL, ESSENTIAL
COMMUNICATIONS & INK LLC,
REVOLUTIONARY GRAPHICS, INC.,
and THE WINDWOOD GROUP LLC,

    **Defendants.**

------------------------------------------------ X

**USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/14/09**

**OPINION AND ORDER**

**05 Civ. 7869 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

    FUJIFILM U.S.A. ("Fuji") brings this action alleging mail and wire fraud and commercial bribery in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"),[1] common law fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.  In an Opinion and Order dated July 17, 2009 ("7/17/09 Order"), this Court granted ADK

---

[1]  *See* 18 U.S.C. §§ 1962(c)-(d).

America, Inc. ("ADK") and Dwain Taylor's joint motion to dismiss Fuji's

Complaint with respect to Taylor, but denied the motion as to ADK.[2] Fuji has filed

an Amended Complaint, and Taylor has again moved to dismiss. For the reasons

discussed below, Taylor's motion is denied.

## II.   BACKGROUND

A detailed description of the facts can be found in this Court's 7/17/09

Order.[3] The instant Opinion and Order assumes familiarity with the facts of this

case and the parties involved.

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the court must "accept as true all of the factual

---

[2]     Five motions to dismiss Fuji's original Complaint were filed by the
following groups of defendants: (1) Scott McNulty; (2) Lori McNulty, AWOL, and
Revolutionary Graphics, Inc. ("RG"); (3) Michael Connell and Essential
Communications & Ink LLC ("ECI"); (4) Frank Franze and The Windwood Group
LLC ("Windwood") (collectively the "Windwood Defendants"); and (5) Dwain
Taylor and ADK (collectively the "ADK Defendants"). Pursuant to this Court's
7/17/09 Order, the ADK Defendants' motion was granted with respect to Taylor,
but denied as to ADK. The Windwood Defendants' motion to dismiss the
substantive RICO claim was granted with respect to Windwood, but denied with
respect to Franze. All other defendants' motions were denied.

[3]     *See Fuji Photo Film U.S.A., Inc. v. McNulty*, — F. Supp. 2d —, No.
05 Civ. 7869, 2009 WL 2146911 (S.D.N.Y. July 17, 2009).

allegations contained in the complaint"[4] and "draw all reasonable inferences in the plaintiff's favor."[5]  However, the court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[6]

To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[7]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]  Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[9]  Pleading a fact that is "merely consistent with a defendant's liability" does not satisfy the

---

[4]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[5]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[6]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation omitted).

[7]     *Twombly*, 550 U.S. at 564.

[8]     *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quotation omitted).

[9]     *Id.* (quotation marks omitted).

plausibility standard.[10]

## B.    RICO

A plaintiff claiming a civil RICO violation must allege "'(1) a violation of the RICO statute, [section] 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of [s]ection 1962.'"[11]  In considering civil RICO claims, a court must be mindful of the devastating effect such claims may have on defendants.[12]  Civil RICO should not be used to transform a "garden variety fraud or breach of contract case[] . . . into a vehicle for treble damages."[13]

### 1.    Enterprise

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated

---

[10]    *Id.* (quotation marks omitted).

[11]    *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quoting *De Falco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001)).

[12]    *See Kirk v. Heppt*, 423 F. Supp. 2d 147, 150 (S.D.N.Y. 2006) ("Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (citations and quotation marks omitted).

[13]    *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000). *Accord Kirk*, 423 F. Supp. 2d at 149 (courts "must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing").

in fact although not a legal entity."[14]  A RICO enterprise "need not have a

hierarchical structure or a 'chain of command.'"[15] Additionally, "decisions may be

made on an ad hoc basis and by any number of methods" and "[m]embers of the

group need not have fixed roles."[16]  "In perhaps its least developed form, an

enterprise may be found where there is simply a discrete economic association

existing separately from the racketeering activity."[17]  A party must plead the

existence of a RICO enterprise in accordance with Rule 8(a) of the Federal Rules

of Civil Procedure.[18]

### 2.    Pattern of Racketeering Activity

#### a.    Mail Fraud and Wire Fraud

To plead a pattern of racketeering activity, a plaintiff must allege at

least two predicate acts of racketeering activity occurring within a ten-year

period.[19] "The elements of mail and wire fraud are (i) a scheme to defraud (ii) to

---

[14]     18 U.S.C. § 1961(4).

[15]     *Boyle v. United States*, — U.S. —, 129 S. Ct. 2237, 2245 (2009).

[16]     *Id.*

[17]     *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (citations and quotation marks omitted).

[18]     *See Sony Music Entm't Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406, at *6 (S.D.N.Y. Feb. 26, 2002) (citation omitted).

[19]     *See* 18 U.S.C. § 1961(5).

get money or property, (iii) furthered by the use of interstate mail or wires."[20]  As

to the first element, a plaintiff must demonstrate "(i) the existence of a scheme to

defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the

defendant, and (iii) the materiality of the misrepresentations."[21]

Mail and wire fraud must be pled with particularity in accordance with

Rule 9(b).[22]  "Because Rule 9(b) requires a plaintiff to state on the record the

specific nature of the fraud, fraud allegations may not be based upon information

and belief."[23]  However, the heightened pleading requirements of Rule 9(b) may be

relaxed "when the facts underlying the fraud are peculiarly within [the] opposing

party's knowledge."[24] "[T]his exception to the general rule must not be mistaken

for license to base claims of fraud on speculation and conclusory allegations."[25]

---

[20]     *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000) (citations omitted).

[21]     *Id.* (citations omitted).

[22]     *See Spool*, 520 F.3d at 184-85 (citation omitted).

[23]     *Allied Ir. Banks, P.L.C. v. Bank of Am., N.A.*, No. 03 Civ. 3748, 2006 WL 278138, at *6 (S.D.N.Y. Feb. 2, 2006) (citing *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

[24]     *Id.*

[25]     *Wood ex rel. United States v. Applied Research Assocs.*, No. 08 Civ. 3799, 2009 WL 2030240, at *2 n.1 (2d Cir. July 13, 2009) (quotation omitted). *Accord Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

Where a plaintiff is permitted to plead on information and belief, the "complaint

must adduce specific facts supporting a strong inference of fraud or it will not

satisfy even a relaxed pleading standard."[26]

When a plaintiff asserts that "the mail or wire transmissions were

themselves fraudulent . . . the complaint should specify the fraud involved, identify

the parties responsible for the fraud, and where and when the fraud occurred."[27]

However, when a plaintiff alleges that "the mail or wire fraud was only used in

furtherance of a scheme to defraud, then the complaint does not have to be as

specific with respect to each allegation of mail or wire fraud, so long as the RICO

scheme is sufficiently pled to give notice to the defendants."[28]

### b. Continuity

The predicate acts alleged by the plaintiff must be related and

---

[26]     *Wood*, 2009 WL 2030240, at *2 n.1 (quotation marks omitted).

[27]     *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486,
498 (S.D.N.Y. 2007) (citation and quotation marks omitted). *Accord
Southern Ill. Laborers' & Employers Health and Welfare Fund v. Pfizer*, No. 08
Civ. 5175, 2009 WL 3151807, at *4 n.10 (S.D.N.Y. Sept. 30, 2009) (citation
omitted).

[28]     *World Wrestling Entm't*, 530 F. Supp. 2d at 498 (citation and
quotation marks omitted). *Accord AMA v. United Healthcare Corp.*, 588 F. Supp.
2d 432, 442 (S.D.N.Y. 2008).

7

continuous.[29] The "'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern — a series of related predicate acts extending over a substantial period of time — or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed."[30]

"Although factors such as the number and variety of predicate acts and the number of participants may be germane to this showing, closed-ended continuity is primarily a temporal concept."[31] "Notably, [the Second Circuit] has never found a closed-ended pattern where the predicate acts spanned fewer than two years."[32] Nevertheless, "the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."[33] The court must evaluate whether there is closed-ended continuity with respect to each

---

[29]   *See Spool*, 520 F.3d at 183.

[30]   *Id.* (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).

[31]   *Id.* (quotation marks omitted). *Accord First Capital Asset Mgmt.*, 385 F.3d at 181 ("Although continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.") (citation and quotations marks omitted).

[32]   *First Capital Asset Mgmt.*, 385 F.3d at 181. *Acccord Kurins v. Silverman*, No. 08 Civ. 6886, 2009 WL 321011, at *4 (S.D.N.Y. Feb. 11, 2009).

[33]   *First Capital Asset Mgmt.*, 385 F.3d at 181.

8

defendant individually.[34]

### 3. Statute of Limitations

"Civil RICO claims are subject to a four-year statute of limitations . . .

. [that] begins to run when the plaintiff discovers or should have discovered the

RICO injury."[35] "The Second Circuit . . . has adopted a 'separate accrual rule,'

under which a 'new claim accrues and the four-year limitation period begins anew

each time a plaintiff discovers or should have discovered a new and independent

injury.'"[36] However, "[p]ursuant to this rule, a plaintiff who is continuously

injured by an underlying RICO violation may only recover for injuries discovered

or discoverable within four years of the time suit is brought."[37]

---

[34]   *See id.* at 180 ("In analyzing the issue of continuity, assuming
arguendo that the alleged predicate acts constituting the pattern were adequately
pled, we evaluate the RICO allegations with respect to each defendant
individually.") (citing *De Falco*, 244 F.3d at 322 n.22; *United States v. Persico*,
832 F.2d 705, 714 (2d Cir. 1987)).

[35]   *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)
(citations omitted).

[36]   *World Wrestling Entm't*, 530 F. Supp. 2d at 524 (quoting *In re Merrill
Lynch*, 154 F.3d at 59). *Accord Apollon Waterproofing & Restoration v. Bergassi*,
No. 01 Civ. 8388, 2003 WL 1397394, at *3 (S.D.N.Y. Mar. 20, 2003).

[37]   *World Wrestling Entm't*, 530 F. Supp. 2d at 524 (citations omitted).
*Accord Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) ("As long as separate and
independent injuries continue to flow from the underlying RICO violations —
regardless of when those violations occurred — plaintiff may wait indefinitely to
sue, but may then win compensation only for injuries discovered or discoverable

## C.    Common Law Fraud

"The elements of fraud under New York law are: (1) a

misrepresentation or a material omission of material fact which was false and

known by [the] defendant to be false, (2) made for the purpose of inducing the

plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then

suffered an injury as a result of such reliance."[38]  A complaint alleging fraud must

satisfy Rule 9(b)'s requirement that "the circumstances constituting fraud . . . be

stated with particularity."[39]  To comply with the requirements of Rule 9(b), a

plaintiff must: "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."[40]  "Allegations that are

conclusory or unsupported by factual assertions are insufficient."[41]

---

within the four-year 'window' before suit was filed, together, of course, with any
provable future damages.").

[38]      *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d
Cir. 2008) (quotation marks omitted).

[39]      Fed. R. Civ. P. 9(b).  *Accord ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[40]      *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation
marks omitted). *Accord ATSI*, 493 F.3d at 99 (citing *Novak v. Kasaks*, 216 F.3d
300, 306 (2d Cir. 2000)).

[41]      *ATSI*, 493 F.3d at 99. *Accord Rosner v. Bank of China,* 528 F. Supp.
2d 419, 425 (S.D.N.Y. 2007).

### D.    Aiding and Abetting Breach of Fiduciary Duty

"A claim for aiding and abetting a breach of fiduciary duty requires:
(1) a breach by a fiduciary of obligations to another, (2) that the defendant
knowingly induced or participated in the breach, and (3) that [the] plaintiff suffered
damage as a result of the breach."[42]  A defendant "knowingly participates in a
breach of fiduciary duty only when he or she provides substantial assistance to the
primary violator."[43]  "Substantial assistance may only be found where the alleged
aider and abettor affirmatively assists, helps conceal or fails to act when required to
do so, thereby enabling the breach to occur."[44]

## IV.    DISCUSSION

### A.    RICO

#### 1.    Enterprise

In the 7/17/09 Order, I held that Fuji had sufficiently pled an
association-in-fact enterprise.[45]  Nevertheless, Taylor renews his argument that

---

[42]    *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)
(quotation marks omitted).

[43]    *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005) (citation and
quotation marks omitted).

[44]    *Id.* (citation and quotation marks omitted).

[45]    *See Fuji,* 2009 WL 2146911, at *5.

11

Fuji's enterprise allegations are inadequate because they amount to the "rimless hub and spoke conspiracy/enterprise [that] is not favored, whether or not there is more than one defendant on each spoke."[46] Specifically, Taylor asserts that the Amended Complaint fails to plead any facts regarding how the defendants "were connected or interdependent or worked together."[47]

Taylor's contention is again unavailing. As noted in the 7/17/09 Order, the alleged association-in-fact enterprise possessed a discernible structure.[48] McNulty occupied the center of the enterprise and used his position within Fuji to coordinate the activities of the individual and corporate defendants that made up the enterprise's outer edge.[49] The alleged enterprise was by no means "rimless;" much of its success over a nine-year period was attributable to the extensive cooperation among the vendor defendants. Notably, the Amended Complaint alleges that at McNulty's direction, Taylor billed Fuji for services purportedly provided by co-defendants RG and ECI, but which Taylor knew were never

---

[46]     Memorandum of Law in Support of Defendant Dwain K. Taylor's Motion to Dismiss ("Def. Mem.") at 19.

[47]     *Id.* at 20.

[48]     *See Fuji,* 2009 WL 2146911, at *6.

[49]     *See* Amended Complaint ("Am. Compl.") ¶ 14.

performed.[50]

## 2.    Pattern of Racketeering Activity

### a.    Predicate Acts of Mail and Wire Fraud

In the 7/17/09 Order, I held that Fuji's allegations of mail and wire

fraud were insufficient with respect to Taylor.[51]  Specifically, I noted that Fuji's

Complaint failed to plead any facts regarding: (1) any acts committed by Taylor;

(2) Taylor's knowledge of the fraudulent invoices; or (3) Taylor's awareness of

other defendants' actions.[52]  I also held that because ADK was not a "small, one or

two-person operation," it was "neither reasonable nor fair to impute the actions of

ADK to Taylor" merely by virtue of his position within ADK.[53]  Taylor argues that

the allegations of fraud in the Amended Complaint are still insufficient because

they do not satisfy the pleading requirements of Rule 9(b) and are substantially

predicated upon Taylor's position within ADK.[54]  I disagree.

### i.    Indirect Billing Schemes

Fuji's allegations of mail and wire fraud are sufficient with respect to

---

[50]    *See id.* ¶¶ 33, 40.

[51]    *See Fuji,* 2009 WL 2146911, at *8.

[52]    *See id.*

[53]    *Id.*

[54]    *See* Def. Mem. at 13.

13

the ADK indirect billing schemes. The Amended Complaint alleges that from 1999 to 2003, ADK submitted invoices for services purportedly provided by RG and ECI, but which Fuji claims were never performed.[55] Fuji alleges that Taylor "directed, monitored, and supervised" the preparation and submission of the fictitious invoices that pertain to RG.[56] Similarly, the Amended Complaint alleges that Taylor caused Fuji to remit payment to ECI, indirectly through ADK, for services that Taylor knew were never performed.[57] Fuji has provided a schedule of invoices for both schemes.[58] Additionally, Fuji has submitted copies of checks and wire transfer applications signed by Taylor and addressed to RG and ECI.[59]

Taylor argues that Fuji has failed to plead sufficient facts to support a strong inference that he knew that the invoices submitted to Fuji by ADK were fraudulent.[60] However, this contention is negated by three specific allegations in the Amended Complaint. *First*, the Amended Complaint alleges that Taylor was

---

[55]     *See* Am. Compl. ¶¶ 32, 39.

[56]     *Id.* ¶ 31.

[57]     *See id.* ¶ 39.

[58]     *See id.* Exs. B, C, D, E.

[59]     *See id.* Ex. H.

[60]     *See* Def. Mem at 13.

14

Fuji's "principal contact" at ADK.[61]  As such, Taylor was responsible for

"coordinating and controlling [ADK's] work for Fuji" and was in regular contact

with McNulty.[62]  *Second*, as previously noted, the Amended Complaint alleges that

Taylor directed and oversaw the creation of the invoices that ADK submitted to

Fuji on behalf of RG.[63]  More specifically, Fuji alleges that Taylor "made up, or

wrote down at McNulty's direction, [the] work descriptions on these invoices."[64]

*Third*, with respect to the ECI invoices, the Complaint alleges that McNulty

"instructed ADK and Taylor as to the amounts and descriptions to be billed to

Fuji."[65]  These allegations, together with the copies of the checks and wire transfer

applications authorized by Taylor, give rise to a strong inference that Taylor was

aware that the invoices submitted to Fuji by ADK were fraudulent.

### ii.    Ticket Scheme

Fuji's allegations of fraud are also sufficient with respect to the ADK

ticket scheme.  The Amended Complaint alleges that at McNulty's direction,

Taylor purchased tickets to sporting and entertainment events and submitted

---

[61]    Am. Compl. ¶ 6.

[62]    *Id.*

[63]    *See id.* ¶ 31.

[64]    *Id.* ¶ 33.

[65]    *Id.* ¶ 40.

15

invoices to Fuji that reflected the costs of these purchases, but concealed that the tickets had been purchased.[66] The Amended Complaint further alleges that Taylor also directed other ADK employees to purchase tickets on McNulty's behalf.[67] The Amended Complaint pleads facts describing the nature and operation of the scheme, as well as the specific function of the fraudulent invoices.[68] Finally, Fuji has provided a schedule of the invoices that it claims to be fraudulent.[69]

Taylor contends that the Amended Complaint's allegations are insufficient because Fuji has failed to plead: (1) how McNulty used the tickets, or (2) whether Taylor was aware that the tickets were being used for an improper use.[70] However, the Amended Complaint alleges — and Taylor does not appear to dispute — that the costs of the ticket purchases were invoiced under descriptions of various, unrelated computer projects.[71] Additionally, none of the descriptions listed on the schedule of invoices submitted for the scheme make any mention of

---

[66]     *See id.* ¶ 44-46.

[67]     *See id.* ¶ 45.

[68]     *See id.* ¶¶ 44-46.

[69]     *See id.* Ex. F.

[70]     *See* Def. Mem. at 13-14.

[71]     *See* Am. Compl. ¶ 46.

16

the ticket purchases or other client-entertainment expenditures.[72]  Finally, the

Amended Complaint specifically alleges that the unrelated invoice descriptions

were used to conceal the fact that the tickets were purchased.[73]  None of these

details are consistent with a good faith belief that the tickets were purchased for a

proper purpose.  Accordingly, Fuji has met its pleading burden with respect to the

alleged ticket scheme.

### iii.    Pleading on Information and Belief

Finally, Taylor renews his argument that Fuji's RICO claims are

inadequate because many of the allegations in the Amended Complaint are asserted

on information and belief.[74]  However, as noted in the 7/17/09 Order, "the

heightened pleading requirements of Rule 9(b) may be relaxed when the facts

underlying the fraud are peculiarly within the opposing party's knowledge."[75]

Fuji has repeatedly maintained that it is entitled to a relaxed pleading

standard because the underlying details of the alleged schemes are peculiarly

within the defendants' knowledge.  Specifically, Fuji has asserted that McNulty, by

---

[72]    *See id*. Ex. F.

[73]    *See id*. ¶ 46

[74]    *See* Def. Mem. at 11.

[75]    *Fuji,* 2009 WL 2146911, at *8 (quotation marks omitted).

virtue of his position within Fuji's Computer Products Division ("CPD"), was its only employee with specific knowledge of the fraudulent invoices.[76]  Fuji also argues that it reasonably relied upon McNulty's loyalty as an employee.[77]  While I find both of these contentions compelling, neither is indispensable because Fuji has pled sufficient facts to support a strong inference of fraud in connection with all of the schemes in which Taylor allegedly participated.

With respect to the alleged indirect billing schemes, the Amended Complaint pleads facts describing the nature and operation of the schemes as well as Taylor's specific role within each scheme.[78]  Additionally, as noted in the 7/17/09 Order, Fuji has provided the dates, amounts, invoice numbers, and descriptions of all invoices that it claims to be fraudulent.[79]  Finally, Fuji has provided copies of checks and wire transfer applications signed by Taylor which correspond to the dates alleged for the respective schemes.[80]

---

[76]     *See* Transcript of 1/4/06 Oral Argument at 53.  Indeed, Taylor concedes that "[w]hen McNulty left Fuji, no Fuji employee knew much about the operation of the CPD." Reply Memorandum of Law in Support of Motion of Dwain K. Taylor to Dismiss the Amended Complaint at 10.

[77]     *See* Am. Compl. ¶¶ 20-22.

[78]     *See id.* ¶¶ 31-33, 39-40.

[79]     *See id.* Exs. B, C, D, E.

[80]     *See id.* Ex. H.

Similarly, with respect to the alleged ticket scheme, Fuji has pled facts describing both the mechanics of the scheme and affirmative acts performed by Taylor in furtherance of the scheme.[81]  Additionally, Fuji has provided the dates, amounts, invoice numbers, and descriptions of all invoices that it claims to be fraudulent.[82]  Finally, because Fuji alleges that the tickets were purchased for McNulty's personal use, it is logical that the specific details of the scheme would be known only to Taylor and McNulty.

### b.    Continuity

The Amended Complaint alleges that Taylor participated in three separate schemes: (1) an indirect billing scheme involving RG that lasted from 1999 to 2003; (2) an indirect billing scheme involving ECI that lasted from 1999 to 2003; and (3) a ticket scheme that lasted from 2002-2003.[83]  Together, these three schemes spanned a total of four years, significantly longer than the two years

---

[81]    See id. ¶¶ 44-46.

[82]    See id. Ex. F.

[83]    See id. ¶¶ 32, 39, 44.  Taylor argues that because the Amended Complaint's pleadings are insufficient with respect to the indirect billing schemes — and the remaining ticket scheme lasted only eleven months — Fuji has failed to establish closed-ended continuity as a matter of law. See Def. Mem. at 20-21. However, as I have already determined that Fuji's allegations are sufficient with respect to the indirect billing schemes, this argument has no merit.

19

generally required to establish closed-ended continuity.[84]  As set forth in detail in

the Amended Complaint, these schemes involved countless predicate acts of fraud

and multiple participants, including both corporate and individual defendants.

Finally, as noted in the 7/17/09 Order, the fact that Fuji was the only victim of the

alleged schemes does not preclude a finding of closed-ended continuity.[85]

Therefore, Fuji has plausibly pled the continuity requirement with respect to

Taylor.

### 3.    Statute of Limitations

In the 7/17/09 Order, I held that because Fuji claimed that all of the

defendants' schemes — with the exception of the AWOL scheme — resulted in

separate and independent injuries that continued beyond September 2001, Fuji's

---

[84]      In a footnote in his Memorandum of Law, Taylor asserts that prior to
2003, Fuji's account with ADK was managed out of Los Angeles, as opposed to
Taylor's primary location in New York. *See* Def. Mem. at 10. Taylor contends that
this distinction renders the Amended Complaint's allegations regarding his
complicity in the schemes implausible, particularly prior to 2003. *See id.* However,
the Amended Complaint explicitly states that Taylor was responsible for
coordinating and overseeing ADK's activities with Fuji "[a]t all times relevant to
the Amended Complaint." Am. Compl. ¶ 6. It is not implausible in today's world
of instant worldwide communications that coordination and oversight has no
geographic limits. Accordingly, Taylor's contention raises an issue of fact that
cannot be resolved at the motion to dismiss stage.

[85]      *See Fuji,* 2009 WL 2146911, at *9 (citation omitted).

RICO claims were timely pursuant to the separate accrual rule.[86]  As to the AWOL

scheme, I noted that because Fuji maintained that the doctrine of fraudulent

concealment operated to toll the statute of limitations until 2004, the application of

the statute of limitations to the AWOL scheme raised an issue of fact that could not

be resolved at the motion to dismiss stage.[87]

Taylor argues that Fuji is not entitled to rely on the doctrine of

fraudulent concealment because the Amended Complaint fails to plead: (1) any

affirmative acts committed by Taylor; (2) that Taylor's acts prevented Fuji from

discovering its claims; or (3) that Fuji exercised due diligence in pursuing the

discovery of its claims prior to September 2001.[88]  However, the Amended

Complaint's pleading of fraudulent concealment has no bearing on Fuji's RICO

claims against Taylor.  As Fuji alleges that all three schemes in which Taylor

participated resulted in separate and independent injuries extending beyond

September 2001, its claims against Taylor are timely under the separate accrual

rule.[89]

---

[86]     *See id.* at *11.

[87]     *See id.*

[88]     *See* Def. Mem. at 22-23.

[89]     However, as noted in the 7/17/09 Order, Fuji may be unable to
recover damages for acts that occurred prior to September 2001.  *See Fuji,* 2009

21

### B.    Supplemental Jurisdiction

Because Fuji's RICO claims against Taylor will proceed, this Court will exercise supplemental jurisdiction over Fuji's state law claims.

### C.    Common Law Fraud

In the 7/17/09 Order, I held that because Fuji's RICO allegations were insufficient with respect to Taylor, Fuji's common law fraud claims predicated upon the same underlying acts of fraud had to be dismissed.[90]  I also held that Fuji's common law fraud claims against ADK were not barred by New York law because they were "based on misrepresentations that were separate and distinct from any contractual relationship that existed between Fuji and ADK."[91]

Taylor now renews his argument that Fuji's common law fraud claims even as repled in the Amended Complaint should be dismissed because New York law bars fraud claims that arise from a contractual relationship.[92]  This argument fails for three reasons.  *First*, Fuji denies the existence of a contractual relationship

---

WL 2146911, at *11.

[90]    *See id.*

[91]    *Id.*

[92]    *See* Def. Mem. at 15.

22

with ADK.[93]  *Second*, even assuming, as Taylor contends, that Fuji's pleadings

implicitly acknowledge the existence of a contract between Fuji and ADK, there is

nothing in the Amended Complaint to suggest that the scope of ADK's obligations

under that contract extended to billing Fuji for services performed by RG and ECI.

At best, Taylor's contention raises an issue of fact that cannot be resolved at the

motion to dismiss stage.

   *Third*, contrary to Taylor's assertions, Fuji pleads sufficient facts to

plausibly infer that Taylor was aware that McNulty was not acting within the scope

of his authority at Fuji.  Specifically, the Amended Complaint alleges: (1) that

McNulty instructed Taylor as to the amounts and descriptions to be billed in

ADK's invoices;[94] (2) that McNulty directed Taylor to bill Fuji for the costs of

services performed by RG before ADK had received notice of the work from RG;[95]

and (3) that McNulty caused Taylor to invoice the costs of ticket purchases to

sporting and entertainment events under various misleading descriptions.[96]  As

none of these actions by McNulty were indicative of a bona fide principal-agent

---

[93] *See* Plaintiff's Memorandum of Law in Opposition to Defendant Dwain K. Taylor's Motion to Dismiss at 5.

[94] *See* Am. Compl. ¶¶ 33, 40.

[95] *See id.* ¶ 33.

[96] *See id.* ¶ 46.

relationship, the allegations in the Amended Complaint support a strong inference

that Taylor was aware that McNulty was not acting within the scope of his

authority.  Accordingly, Taylor's motion to dismiss Fuji's common law fraud

claims is denied.

### D.    Aiding and Abetting Breach of Fiduciary Duty

Finally, Taylor argues that Fuji's aiding and abetting breach of

fiduciary duty claim should be dismissed because the Amended Complaint fails to

allege: (1) that Taylor had actual knowledge that McNulty was approving false

invoices, or (2) that Taylor had actual knowledge of any personal benefit to

McNulty.[97]  However, the Amended Complaint repeatedly alleges that Taylor was

aware of McNulty's fraudulent conduct.[98]  Notably, Fuji asserts that Taylor

received instruction from McNulty as to the amounts and invoice descriptions to

use to bill Fuji for services purportedly performed by RG and ECI.[99]  Further,

Taylor's contention that he had no knowledge of any personal benefit to McNulty

is directly contradicted by Fuji's claim that Taylor procured tickets to sporting and

---

[97]    *See* Def. Mem. at 19.

[98]    *See* Am. Compl. ¶¶ 31-34, 39-41, 45-46.

[99]    *See id.* ¶¶ 33, 40.

24

entertainment events for McNulty's personal use.[100]   Therefore, Taylor's motion to

dismiss Fuji's claim for aiding and abetting breach of fiduciary duty is denied.

## V.    CONCLUSION

For the foregoing reasons, Taylor's motion to dismiss Fuji's Amended

Complaint is denied.  The Clerk of the Court is directed to close this motion

(Docket No. 83).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 14, 2009

---

[100]    *See id.* ¶¶ 45-47.

25

## - Appearances -

**For Plaintiff FUJIFILM U.S.A.**:

Joanna Andrea Diakos, Esq.
Sarah Peck Kenney, Esq.
David Scott Versfelt, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3991

**For Defendant Scott McNulty:**

Alan Ross Pearlson, Esq.
Sills Cummis & Gross, P.C.
One Rockfeller Plaza
New York, New York 10020
(212) 643-5495

**For Defendants Lori McNulty, AWOL, and Revolutionary Graphics, Inc.:**

Richard J. Schaeffer, Esq.
Dornbush, Mensch, Mandelstam & Schaeffer LLP
747 Third Avenue
New York, New York 10017
(212) 759-3300

**For Defendants Michael Connell and Essential Communication & Ink LLC:**

David Lawrence Blank, Esq.
Schwartz Simon Edelstein Celso & Kessler LLP
Ten James Street
Florham Park, New Jersey 07932
(973) 301-0001

Henry Ellis Klingeman, Esq.
Krovatin Klingeman LLC
744 Broad Street, Suite 1903
Newark, New Jersey 07102
(973) 424-9777

**For Defendants Frank Franze and The Windwood Group LLC:**

Dan E. LaBelle, Esq.
Halloran & Sage LLP
315 Port Road West
Westport, Connecticut 06880
(203) 227-2855

**For Defendants Dwain Taylor and ADK America, Inc.:**

Michael S. Devorkin, Esq.
Shawn Preston Ricardo, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300