UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

FUJI PHOTO FILM U.S.A., INC.,

        Plaintiff,

    - against -

SCOTT F. McNULTY, LORI S.
McNULTY, a/k/a LORI STRAUB,
MICHAEL C. CONNELL, FRANK
FRANZE, DWAIN K. TAYLOR, ADK
AMERICA, INC., AWOL, ESSENTIAL
COMMUNICATIONS & INK LLC,
REVOLUTIONARY GRAPHICS, INC.,
and THE WINDWOOD GROUP LLC,

        Defendants.

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/04/09

**OPINION AND ORDER**

**05 Civ. 7869 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

FUJIFILM U.S.A. ("Fuji") brings this action alleging mail and wire fraud and commercial bribery in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"),[1] common law fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty.

---

[1]    *See* 18 U.S.C. §§ 1962(c)-(d).

Defendant Scott F. McNulty asserts a counterclaim against Fuji alleging

defamation. Defendants Frank Franze and The Windwood Group LLC

("Windwood") (together "Windwood Defendants") assert counterclaims against

Fuji alleging breach of contract and fraud. Fuji now moves to dismiss all three

counterclaims. For the reasons discussed below, Fuji's motions are granted.

## II. BACKGROUND[2]

### A. The Alleged Defamation

Fuji initiated the instant action on September 9, 2005, alleging that

the defendants coordinated a series of schemes to defraud Fuji.[3] On September 9,

2005, the same day that Fuji filed its Complaint, Fuji sent a memorandum (the

"September 9 Memorandum") to its employees regarding the claims filed against

---

[2]   A detailed description of the facts can be found in this Court's
7/17/09 Order. *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300,
(S.D.N.Y. 2009); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, No. 05 Civ.
7869, 2009 WL 3334867 (S.D.N.Y. Oct. 14, 2009). The instant Opinion and
Order provides a summary of the facts relevant to the Windwood Defendants' and
McNulty's counterclaims. Otherwise, the instant Opinion and Order assumes
familiarity with the underlying facts of this case and the parties involved.

[3]   *See* Complaint ("Compl.") ¶ 14. Fuji filed an Amended Complaint on
August 6, 2009. McNulty's counterclaim arises out of the original complaint.
Consequently, all references to the Complaint herein are to Fuji's original
complaint.

2

McNulty.[4]  McNulty alleges that Fuji sent the September 9 Memorandum to "third

parties including parents of children participating in McNulty's son's hockey

league" (the "Hockey Parents").[5]  In its entirety, the September 9 Memorandum

states:

> I [Atsushi Yoneda, a senior Fuji executive] wanted to
> communicate with all of you about a civil action Fujifilm USA
> has taken that may cause you concern, and may generate media
> attention in the days ahead.  Fuji Photo Film USA has filed a civil
> complaint in the US District Court against a former employee,
> Scott McNulty, and a number of other defendants.  As described
> in the complaint, this action arose out of a series of fraudulent
> schemes orchestrated by Scott McNulty, with the specific intent
> to defraud our company, involving certain outside vendors hired
> by Scott McNulty to process rebates and perform certain
> advertising, marketing, promotional and web design maintenance
> services.  At this time, no other Fujifilm employees are known to
> be involved in this matter.
>
> This is an unfortunate and regrettable situation that occurred over
> the course of nine years, ending in 2004.  These schemes were
> extremely well hidden and difficult to uncover.  As you know, we
> have strengthened our compliance policies and procedures, which
> can help to prevent this kind of fraud in the future.
>
> I felt it was important to share this information with you, and
> assure you that Fujifilm is a company that maintains the highest
> legal and ethical standards.  Actions of this kind will not be
> tolerated.  I ask you to join with senior management and our

---

[4]     *See* Answer with Counterclaim and Cross-Claim of Defendant Scott
F. McNulty ("McNulty Answer") ¶ 152.

[5]     *See id.* ¶ 155.

3

> compliance management team in ensuring that all policies and
> procedures are followed, and in being vigilant to protect our
> company against behavior of this sort in the future.[6]

McNulty alleges that the September 9 Memorandum caused damage

to his professional reputation and subjected him "ridicule and contempt."[7] As a

result of Fuji's distribution of the September 9 Memorandum, McNulty alleges he

sustained damages amounting to "not less than $1 million."[8]

## B.    The Alleged Breach of Contract

The Windwood Defendants allege that from April 2003 to August

2004, Windwood provided Fuji with information technology services including

software development, infrastructure development, and project administration

relating to Fuji's customer rebate program.[9]  The Windwood Defendants further

allege that Fuji violated its agreement to pay for Windwood's services.[10]  The

Windwood Defendants allege that Fuji's failure to pay resulted in approximately

---

[6]      September 9 Memorandum, Ex. B to 9/21/09 Declaration of Joanna
A. Diakos, Counsel for Fuji ("Diakos Decl.").

[7]      McNulty Answer ¶¶ 156, 159.

[8]      *Id.* ¶ 161.

[9]      *See* Answer, Special Defenses, Cross Claim and Counterclaim of
Defendants Frank Franze and the Windwood Group LLC ("Windwood Answer")
at 16.

[10]      *See id.*

4

$80,000 in damages.[11]

### C.    The Alleged Fraud

The Windwood Defendants allege that in approximately April 2004, Fuji asked Windwood to continue providing its services while Fuji transitioned its customer rebate program to an in house operation.[12]  The Windwood Defendants allege that Fuji told Windwood that Fuji would continue to pay for Windwood's services during the transition period, but, in fact, had no intention of paying.[13]  The Windwood Defendants allege that, based on Fuji's representation, Windwood continued to provide services to Fuji and have suffered $80,000 in damages as a result.[14]

## III.   APPLICABLE LAW

### A.    Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all of the factual

---

[11]    *See id.*

[12]    *See id.*

[13]    *See id.* at 16-17.

[14]    *See id.* at 17.

allegations contained in the [counterclaim]"[15] and "draw all reasonable inferences

in the [non-movant's] favor."[16]  However, the court need not accord "[l]egal

conclusions, deductions or opinions couched as factual allegations . . . a

presumption of truthfulness."[17]

　　　　　To survive a 12(b)(6) motion to dismiss, the allegations in the

[counterclaim] must meet a standard of "plausibility."[18]  A counterclaim is facially

plausible "when the [non-movant] pleads factual content that allows the court to

draw the reasonable inference that the [movant] is liable for the misconduct

alleged."[19]  Plausibility "is not akin to a probability requirement," rather

plausibility requires "more than a sheer possibility that a [movant] has acted

unlawfully."[20]  Pleading a fact that is "merely consistent with a [movant's]

---

[15]　　*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[16]　　*Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[17]　　*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

[18]　　*Twombly*, 550 U.S. at 564.

[19]　　*Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[20]　　*Id.* (quotation marks omitted).

liability" does not satisfy the plausibility standard.[21]

When determining the sufficiency of a claim under Rule 12(b)(6), the court is normally required to consider only the allegations on the face of the pleading. "Documents that are attached to the [pleading] or incorporated in it by reference are deemed part of the pleading and may be considered."[22] The court is only allowed to consider documents outside the pleading if the documents are integral to the pleading or subject to judicial notice.[23]

## B.    Defamation

Under New York law, a claim for defamation must allege "(1) a false statement about the [complainant]; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'"[24]  A statement that "tend[s] to injure another in his or her

---

[21]    *Id.* (quotation marks omitted).

[22]    *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[23]    *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).

[24]    *Gargiulo v. Forster & Garbus Esqs.*, No. 06 Civ. 2461, — F. Supp. 2d —, 2009 WL 2868727, at *3 (S.D.N.Y. Sept. 3, 2009) (citing *Dillion v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)).

7

trade, business or profession" is defamatory per se.[25]  A pleading asserting a cause

of action for defamation "is only sufficient if it adequately identifies 'the

purported communication, and an indication of who made the communication,

when it was made, and to whom it was communicated.'"[26]

### 1.    Section 74 of the New York Civil Rights Law

A privilege exists under section 74 of the New York Civil Rights Law

for "the publication of a fair and true report of any judicial proceeding" by a

person, firm, or corporation. "For a report to be fair and true within the meaning

of [section] 74, it is enough that the substance of the article be substantially

accurate."[27]  The report is not required to use the same words as the pleadings to

convey the substance of the judicial proceeding and "[t]he challenged

language . . . 'should not be dissected and analyzed with a lexicographer's

---

[25]     *Stern v. Cosby*, No. 07 Civ. 8536, — F. Supp. 2d —, 2009 WL
2460609, at *9 (S.D.N.Y. Aug. 12, 2009) (citing *Liberman v. Gelstein*, 80 N.Y.2d
429, 435 (1992)).

[26]     *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000)
(quoting *Broome v. Biondi*, No. 96 Civ. 0805, 1997 WL 83295, at *2 (S.D.N.Y.
Feb. 10, 1997)).

[27]     *Southridge Capital Mgmt., LLC v. Lowry*, No. 01 Civ. 4880, 2003
WL 68041, at *2 (S.D.N.Y. Jan. 7, 2003) (quotation marks omitted).

precision.'"[28]  However, the privilege does not apply to statements in a report that imply misconduct beyond that alleged in the judicial proceeding on which the report is based.[29]

The section 74 privilege is absolute and is not defeated by allegations of malice or bad faith.[30]  However, in *Williams v. Williams*, the New York Court of Appeals carved out an exception to the section 74 privilege for situations where a litigant "maliciously institute[s] a judicial proceeding alleging false and defamatory charges, and . . . then circulate[s] a press release or other

---

[28]     *Idema v. Wager*, 120 F. Supp. 2d 361, 369 (S.D.N.Y. 2000) (quoting *Becher v. Troy Publ'g Co., Inc.*, 183 A.D.2d 230, 234 (3rd Dep't. 1992)).  *Accord, Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006) (finding that an attorney's statement in a New York Law Journal article that his client was "poorly served by a member of [the legal] profession to whom duty came well after other aims and interests" was a fair and true report of the malpractice action filed against the client's former attorney (alteration in original)).

[29]     *See Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dep't 1995) ("If the published account, along with the rest of the article, suggests more serious conduct than that actually suggested in the official proceeding, then the privilege does not attach, as a matter of law." (citations omitted)); *Ocean State Seafood, Inc. v. Capital Newspaper, Div. of Hearst Corp.*, 112 A.D.2d 662, 666 (3d Dep't 1985) (the section 74 "privilege does not apply when the news account of the judicial proceeding is combined with other facts or opinions to imply wrongdoing").

[30]     *See Pelayo v. Celle*, 270 A.D.2d 469, 469 (2d Dep't 2000) (citing *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620 (2d Dep't 1994)).

communication based thereon."[31] The *Williams* exception is narrow "and does not apply 'in the absence of any allegation that the . . . action was brought maliciously and solely for the purpose of later defaming the plaintiff.'"[32]

## 2. The Common Interest Privilege

New York also recognizes a qualified common interest privilege when the defamatory statement is made between persons who share a common interest in the subject matter.[33] A party alleging defamation can overcome the common interest privilege by showing that the defamatory statement was made with either common law or constitutional malice.[34] "Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication."[35] "Constitutional or actual malice means publication with [a]

[31]     23 N.Y.2d 592, 599 (1969).

[32]     *Riel v. Morgan Stanley*, No. 06 Civ. 524, 2007 WL 541955, at *12 (S.D.N.Y. Feb. 16, 2007) (alteration in original) (quoting *Branca v. Mayesh*, 101 A.D.2d 872, 873 (2d Dep't 1984)).

[33]     *See El-Hennawy v. Davita, Inc.*, 50 A.D.3d 625, 626 (2d Dep't 2008) (citing *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996); *Liberman*, 80 N.Y.2d at 437).

[34]     *See Phelan v. Huntington Tri-Village Little League, Inc.*, 57 A.D.3d 503, 505 (2d Dep't 2008) (citing *Liberman*, 80 N.Y.2d at 437-39); *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000).

[35]     *Konikoff*, 234 F.3d at 98 (alterations in original) (citations and quotation marks omitted).

10

high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication."[36] "'Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the qualified privilege.'"[37]

## C.   Breach of Contract

To make out a breach of contract claim under New York law plaintiffs must show "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [accused], and (4) damages."[38] To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract.[39] A breach of contract claim "that fails to allege facts sufficient to show that an enforceable contract existed

---

[36]   *Id.* at 99 (alterations in original) (quotation marks omitted).

[37]   *Golden v. Stiso*, 279 A.D.2d 607, 608 (2d Dep't 2001) (quoting *Kamerman v. Kolt*, 210 A.D.2d 454, 455 (2d Dep't 1994)).

[38]   *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation marks omitted).

[39]   *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

11

between the parties is subject to dismissal."[40]  Additionally, the claimant must

allege the specific provisions of the contract upon which the breach of contract

claim is based.[41]  A claim for breach of contract cannot be sustained by a

conclusory statement that the accused breached a contract.[42]

### D.    Fraud

"The elements of fraud under New York law are: (1) a

misrepresentation or a material omission of material fact which was false and

known by [the accused] to be false, (2) made for the purpose of inducing the

[claimant] to rely on it, and (3) justifiably relied upon by the [claimant], (4) who

then suffered an injury as a result of such reliance."[43]  A complaint alleging fraud

must satisfy Rule 9(b)'s requirement that "the circumstances constituting fraud . . .

be stated with particularity."[44]  To comply with the requirements of Rule 9(b), a

---

[40]     *Id.* (quotation marks omitted).

[41]     *See Sheridan v. Trustees of Columbia Univ. In City of New York*, 296
A.D.2d 314, 315 (1st Dep't 2002); *Matter of Sud v. Sud*, 211 A.D.2d 423, 424 (1st
Dep't 1995).

[42]     *See Berman*, 580 F. Supp. 2d at 202.

[43]     *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 454 (2d
Cir. 2008).

[44]     Fed. R. Civ. P. 9(b).  *Accord ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[45]  "Allegations that are conclusory or unsupported by factual assertions are insufficient."[46]  Additionally, "[a]n action for fraud 'cannot exist when the fraud claim arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express contractual obligations.'"[47]

### E.    Amendments to Pleadings

"Rule 15(a) provides that, other than amendments as a matter of course, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[48]  "[W]hether to permit a plaintiff to amend its pleadings is a matter

---

[45]     *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quotation omitted).  *Accord ATSI*, 493 F.3d at 99 (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

[46]     *ATSI*, 493 F.3d at 99.  *Accord Rosner v. Bank of China*, 528 F. Supp. 2d 419, 425 (S.D.N.Y. 2007).

[47]     *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003) (quoting *PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 761 (S.D.N.Y. 1995).

[48]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

committed to the Court's sound discretion."[49]  However, the Supreme Court has

explained

> If the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits.  In the absence of any
> apparent or declared reason — such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice
> to the opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. — the leave sought should, as the rules
> require, be "freely given."[50]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to

allow leave to replead.'"[51]

## IV.   DISCUSSION

### A.   McNulty Fails to State a Claim for Defamation[52]

[49]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.
2007) (quotation marks omitted).

[50]   *Foman v. Davis*, 371 U.S. 178, 182 (1962). *Accord, e.g., Jin v.
Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[51]   *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6
(S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949
F.2d 42, 48 (2d Cir. 1991)). *Accord Hayden v. County of Nassau*, 180 F.3d 42, 53
(2d Cir. 1999) ("When a motion to dismiss is granted, the usual practice is to grant
leave to amend the complaint.").

[52]   In determining the sufficiency of McNulty's defamation claim, I
considered the September 9 Memorandum and the content of Fuji's Complaint.
The September 9 Memorandum is incorporated by reference and integral to
McNulty's pleading. *See Gargiulo v. Forster & Garbus Esqs.*, No. 06 Civ. 2461,

14

McNulty alleges that "[a]ll of the statements contained in the

[September 9] Memorandum alleging wrongdoing on McNulty's part were

defamatory."[53] Even assuming that the statements regarding McNulty in the

September 9 Memorandum are false, were published to third parties with the

required level of fault, and injured McNulty in his trade, business, or profession,

McNulty fails to state a claim for defamation because the statements made in the

September 9 Memorandum fall within the section 74 privilege. Alternatively,

McNulty fails to state a claim for defamation because he fails to adequately plead

— F. Supp. 2d —, 2009 WL 2868727, at *1 (S.D.N.Y. Sept. 3, 2009) (noting that
in a defamation action, the court "may consider documents attached to the
complaint or incorporated by reference, such as the affidavits containing the
allegedly actionable statements"); *Riel*, No. 06 Civ. 524, 2007 WL 541955, at *4,
*8 (considering documents beyond the complaint, including the document
containing the alleged defamatory statement). Fuji's Complaint is subject to
judicial notice. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels &
Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). With his opposition
memorandum, McNulty submitted a declaration and an affidavit containing
additional details about Fuji's alleged conduct. I did not consider either document
because they are not properly before the court on a motion to dismiss. *See Friedl
v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000) ("[A] district court errs when
it . . . relies on factual allegations contained in legal briefs or memoranda in ruling
on a 12(b)(6) motion to dismiss.") (citations and quotation marks omitted);
*Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999)
("In adjudicating a Rule 12(b)(6) motion, a district court must confine its
consideration to facts stated on the face of the complaint, in documents appended
to the complaint or incorporated in the complaint by reference, and to matters of
which judicial notice may be taken.") (quotation marks omitted).

53    McNulty Answer ¶ 156.

15

that Fuji distributed the September 9 Memorandum to anyone other than Fuji

employees and Fuji's distribution of the September 9 Memorandum to its

employees falls within the common interest privilege.

> 1. **Distribution of the September 9 Memorandum Is Privileged Under Section 74 of the New York Civil Rights Law**

McNulty contends that the section 74 privilege does not apply to the

September 9 Memorandum. *First*, McNulty argues that the September 9

Memorandum "does not provide a fair and true report of the judicial

proceeding."[54]  Specifically, McNulty points to the following statements in the

September 9 Memorandum: (1) "we have strengthened our compliance policies

and procedures, which can help prevent this kind of fraud in the future;" (2) "I felt

it was important to share this information with you and assure you that Fujifilm is

a company that maintains the highest legal and ethical standards;" and (3) "I ask

you to join with senior management and our compliance management team in

being vigilant to protect our company against behavior of this sort in the future."[55]

McNulty argues that these statements, when read in context, go beyond merely

---

[54]     Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendant Scott F. McNulty's Counterclaim for Defamation ("McNulty Opp.") at 5.

[55]     *Id.* at 6 (emphasis omitted).

reciting the allegations of the Complaint and imply "serious further misconduct by McNulty" because they insinuate "that McNulty does not 'maintain the highest legal and ethical standards,' participated in the 'fraud' and engaged in deceitful 'behavior of [the type described in the September 9 Memorandum].'"[56]

      McNulty's argument is unconvincing. To the extent the statements McNulty points to can be read as statements about McNulty, the statements do not imply that McNulty engaged in any misconduct other than that alleged in the Complaint. The remaining statements in the September 9 Memorandum that relate to McNulty either quote directly from[57] or fairly summarize the allegations in the Complaint.[58] Accordingly, the September 9 Memorandum provides a fair and true

---

[56]    *Id.* (quoting the September 9 Memorandum).

[57]    *See* Compl. ¶ 14 ("This is an action arising out of a series of fraudulent schemes orchestrated by McNulty, with the specific intent to defraud Fuji, involving certain outside vendors hired by McNulty for Fuji[] . . . to process rebates and to perform certain advertising, marketing, promotional and website design and maintenance services.")

[58]    *Compare* September 9 Memorandum, Ex.B to Diakos Decl. ("These schemes were extremely well hidden and difficult to uncover."), *with* Compl. ¶¶ 68-69 ("Defendants . . . fradulently concealed their actions from Fuji by engaging in a scheme whereby ADK [America, Inc.] issued false invoices to Fuji . . . . Such concealment prevented Fuji from discovering its claims herein, in that Fuji was unable to learn the true identity of the individuals and entities with which it was doing business, and Fuji was led to believe that servieces were being performed as reflected in the invoices it received and paid . . . .").

report of Fuji's judicial proceedings against McNulty.

     *Second*, McNulty argues that the *Williams* exception to the section 74 privilege is applicable because Fuji acted maliciously when distributing the September 9 Memorandum.[59]  However, McNulty fails to allege that Fuji filed its Complaint maliciously and for the sole purpose of defaming McNulty.  Thus, McNulty's pleading is insufficient to invoke the *Williams* excetion to the section 74 privilege.

          **2.**     **Fuji's Distribution of the September 9 Memorandum to Its Employees Is Protected Under the Common Interest Privilege**

     Fuji admits that it distributed the September 9 Memorandum to its employees.[60]  This distribution is protected by the common interest privilege because Fuji and its employees have a common interest in McNulty's alleged employment-related misconduct.[61]  McNulty argues that the common interest

---

    [59]    *See* McNulty Opp. at 6-9.

    [60]    *See* September 9 Memorandum, Ex. B to Diakos Decl.; Memorandum of Law in Support of Plaintiff's Motion to Dismiss Defendant Scott F. McNulty's Counterclaim for Defamation at 3.

    [61]    *See Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the [common interest] privilege." (citing *McNaughton v.*

18

privilege is inapplicable because Fuji acted maliciously when distributing the September 9 Memorandum.[62] McNulty's allegations that Fuji acted maliciously are conclusory and unsupported by any factual allegations.[63] Thus, McNulty's allegations of malice are not entitled to a presumption of truthfulness and are insufficient to overcome the common interest privilege.

### 3. McNulty Fails to Adequately Plead that the September 9 Memorandum Was Distributed to Third Parties Other Than Fuji Employees

McNulty alleges that Fuji distributed the September 9 Memorandum to the Hockey Parents.[64] McNulty fails to identify which parents received the September 9 Memorandum, whether those parents were also Fuji employees, who at Fuji distributed the September 9 Memorandum to the Hockey Parents, and when and where the distribution occurred. Accordingly, McNulty's pleading with respect to the Hockey Parents is insufficient to state a claim for defamation.[65]

---

*City of New York*, 234 A.D.2d 83, 84 (1st Dep't 1996); *Mock v. LaGuardia Hospital-Hip Hosp., Inc.*, 117 A.D.2d 721, 722 (2d Dep't 1986)).

[62]     *See* McNulty Opp. at 9-10.

[63]     *See* McNulty Answer ¶ 155.

[64]     *See id.*

[65]     *See Ello v. Singh*, 531 F. Supp. 2d 552, 581 (S.D.N.Y. 2007) (finding the plaintiff failed to state a claim for defamation because the plaintiff "fail[ed] to identify to whom [the alleged defamatory] statements were made, or the time and

**B.    The Windwood Defendants Fail to State a Claim for Breach of Contract**

The Windwood Defendants alleges that "Fuji agreed to pay for

Windwood's [information technology consulting] services on an hourly basis,"

"Windwood performed its services in conformance with the agreement," and "Fuji

failed and refused to pay Windwood for services rendered."[66]  However, the

Windwood Defendants fail to allege any facts surrounding the formation of the

contract and fail to point to the specific terms of the contract that Fuji breached.[67]

Accordingly, the Windwood Defendants' counterclaim for breach of contract fails

because the Windwood Defendants neither adequately pled facts showing the

making of a contract between Fuji and Windwood nor adequately pled facts

---

manner in which they were made"); *Camp Summit of Summitville, Inc. v. Visinski*,
No. 06 Civ. 4994, 2007 WL 1152894, at *12 (S.D.N.Y. Apr. 16, 2007) (dismissing
a defamation claim because the claimant "neither allege[d] who at Camp Summit
made the defamatory remarks, nor to whom the comments were made");
*Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849 (S.D.N.Y. 2000) (finding a
claim for defamation insufficient because the claimant "fail[ed] to identify who
made the alleged statements, at what times or places, and to whom the statements
were made").

[66]     Windwood Answer at 16.

[67]     It is also unclear from the Windwood Defendants' pleading whether
the counterclaim is made on behalf of one or both of the Windwood Defendants.
The counterclaim appears to be made on behalf of both Windwood and Franze,
however, the Windwood Defendants never allege that Franze was a party to any
contract with Fuji. *See id.*

showing that Fuji breached the terms of the contract.

## C.    The Windwood Defendants Fail to State a Claim for Fraud

The Windwood Defendants concede that their counterclaim for fraud arises out of the same facts as their counterclaim for breach of contract and do not oppose Fuji's motion to dismiss this counterclaim.[68]   Accordingly, the Windwood Defendant's counterclaim for fraud fails.

## D.    McNulty May Amend His Counterclaim for Defamation and The Windwood Defendants May Amend Their Counterclaim for Breach of Contract

McNulty seeks leave to amend his counterclaim for defamation and the Windwood Defendants seek leave to amend their counterclaim for breach of contract.[69]   Fuji relies on *McCarthy v. Dun & Bradstreet Corporation*[70] to oppose the Windwood Defendants' request on the ground that bringing counterclaims for the first time nearly four years after Fuji filed its initial complaint constitutes undue delay.[71]   In *McCarthy*, the Second Circuit affirmed the district court's

---

[68]    *See* Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendants Frank Franze's and The Windwood Group LLC's Counterclaims ("Windwood Opp.") at 3.

[69]    *See* McNulty Opp. at 11; Windwood Opp. at 3.

[70]    482 F.3d 184, 202 (2d Cir. 2007).

[71]    *See* Reply Memorandum of Law in Further Support of Plaintiff's Motion to Dismiss the Counterclaims of Defendants Frank Franze and the

denial, due to inordinate delay, of the plaintiffs' request to amend their complaint for the second time.[72] The plaintiffs' request came nearly two years after the action commenced, after discovery had closed, and after the defendants had filed a motion for summary judgment.[73]

Although four years have passed since Fuji filed its Complaint, the Windwood Defendants' delay is less significant than the plaintiffs' delay in *McCarthy* because this case has not yet progressed beyond the discovery phase. Additionally, unlike the *McCarthy* plaintiffs, the Windwood Defendants have not been given a prior opportunity to amend their pleading. In light of the preference for deciding cases on the merits and the permissive nature of Rule 15(a), the Windwood Defendants may amend their breach of contract counterclaim. Similarly, McNulty may amend his counterclaim for defamation.

## V.    CONCLUSION

For the foregoing reasons, Fuji's motions to dismiss McNulty's and the Windwood Defendants' counterclaims are granted. McNulty and the

---

Windwood Group LLC at 3-4. Fuji does not make a similar argument with respect to McNulty's counterclaim for defamation.

[72]    *See McCarthy*, 482 F.3d at 202.

[73]    *See id.*

Windwood Defendants are granted leave to file amended counterclaims consistent with this Opinion within twenty days of this Order.  The Clerk of the Court is directed to close these motions (Docket Nos. 90 and 93).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              November 4, 2009

23

## - Appearances -

**For Plaintiff Fuji Photo Film U.S.A., Inc.:**

Joanna Andrea Diakos, Esq.
Sarah Peck Kenney, Esq.
David Scott Versfelt, Esq.
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
(212) 536-3991

**For Defendant Scott McNulty:**

Sheldon Eisenberger, Esq.
The Law Office of Sheldon Eisenberger
30 Broad Street
New York, New York 10004
(212) 422-3843

**For Defendants Lori McNulty, AWOL, and Revolutionary Graphics, Inc.:**

Gordon Mehler, Esq.
Law Offices of Gordon Mehler, P.L.L.C.
747 Third Avenue
32nd Floor
New York, New York 10017
(212) 527-7503

**For Defendant Michael Connell:**

David Lawrence Blank, Esq.
Schwartz Simon Edelstein Celso & Kessler LLP
Ten James Street
Florham Park, New Jersey 07932
(973) 301-0001

24

**For Defendants Frank Franze and The Windwood Group LLC:**

Dan E. LaBelle, Esq.
Halloran & Sage LLP
315 Port Road West
Westport, Connecticut 06880
(203) 227-2855

**For Defendants Dwain Taylor and ADK America, Inc.:**

Michael S. Devorkin, Esq.
Allyson Rachel Albert, Esq.
Shawn Preston Ricardo, Esq.
Golenbock Eiseman Assor Bell & Peskoe LLP
437 Madison Avenue
New York, New York 10022
(212) 907-7300

**For Defendant Essential Communication & Ink LLC:**

Henry Ellis Klingeman, Esq.
Krovatin Klingeman LLC
744 Broad Street
Suite 1903
Newark, New Jersey 07102
(973) 424-9777

David Lawrence Blank, Esq.
Schwartz Simon Edelstein Celso & Kessler LLP
Ten James Street
Florham Park, New Jersey 07932
(973) 301-0001